In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 01-3799 & 01-3802

HAKIM IDDIR, HADJIRA IDDIR, and JUAN A.
LLIVI; LENOAS MALUKAS, ALFONSA MALUKIENNE,
MARIA NICULESCU, RADU-LIVIU NICULESCU,
TATIANA KUDINA, SILVIU-VLAD NICULESCU,
MARIO ROMANOVIC, MARIJA ROMANOVIC,
NORA MORETTI-SANCHEZ, GIANNA A. SANCHEZ,
IVANNA A. SANCHEZ, FUNMI I. OWOLABI,
DAVID OGUNKOYA, and NELLY V. SUYO,

*Plaintiffs-Appellants,*

*v.*

IMMIGRATION AND NATURALIZATION SERVICE; BRIAN R.
PERRYMAN, District Director, Chicago INS; COLIN L.
POWELL, in his official capacity as United States
Secretary of State; UNITED STATES DEPARTMENT
OF STATE; and the UNITED STATES OF AMERICA,

*Defendants-Appellees.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 3401—**Joan B. Gottschall**, *Judge* and
No. 99 C 6689—**Ronald A. Guzman**, *Judge.*

———————

ARGUED MAY 15, 2002—DECIDED AUGUST 6, 2002

———————

Before FLAUM, *Chief Judge*, BAUER and RIPPLE, *Circuit Judges*.

BAUER, *Circuit Judge*.  After winning the immigration lottery, the appellants were given the opportunity to apply for immigrant visas and thereby a chance to become citizens, if they could meet certain requirements within one year's time. The appellants promptly filled out all the necessary forms and jumped through all the applicable hoops the Immigration and Naturalization Service (INS) put in front of them in order to complete their applications for the visas and adjustment of status. Once the forms were filled out, all that remained was for the INS to adjudicate the appellants' status and either grant or deny the applications. Instead, the INS did nothing, and once the year was up, the INS informed the appellants that their applications were denied, not on the merits; rather they were denied simply because they were not heard within the applicable time period. Afterwards, the INS informed the appellants that they would have to reapply and hope to win the lottery a second time to gain citizenship.

Frustrated, the appellants sought writs of mandamus in two district courts to require the INS to adjudicate their status. The *Iddir* case was heard by Judge Gottschall, and the *Kudina* case was heard by Judge Guzman. The judges dismissed both cases, but for different reasons. Judge Gottschall found the plaintiffs' claims moot, *Iddir et al. v. INS et al.*, 166 F. Supp. 2d 1250, 1259 (N.D. Ill. 2001), while Judge Guzman found that he lacked jurisdiction to review the claims due to 8 U.S.C. § 1252(a)(2)(B), *Kudina et al. v. INS et al.*, 2001 WL 1064789, at *3 (N.D. Ill. Sept. 10, 2001). The plaintiffs appeal, and we affirm the dismissals, although on grounds different than those articulated by the district courts.

**BACKGROUND**

The appellants applied for permanent resident visas through the Diversity Visa Lottery Program (DV Program). This program was instituted by Congress to distribute visas to persons from countries that historically have low rates of immigration to the United States. 8 U.S.C. § 1153(c)(1). The statute directs the Attorney General to calculate immigration rates for the past five years and identify low-admission states and regions. 8 U.S.C. §§ 1151(a), 1153(c). The diversity visas are then allotted, based on formula, to persons from the low-admission states or regions. 8 U.S.C. § 1153(c). The program operates on a fiscal year, whereby only a certain number of visas are available to the immigrants from the low-admission states or regions. *Id.* For the fiscal years 1996, 1998, 1999, and 2000 (running generally from October of the specified year through September of the next year), 55,000 visas were made available in each period. 59 Fed. Reg. 61918; 61 Fed. Reg. 58730; 62 Fed. Reg. 45004; 63 Fed. Reg. 41315. Applications far exceeded allotments. For example, in fiscal year 1998 there were 97,391 applications for 55,000 available visas.

The eligible immigrants must submit an application for the lottery during a specified time period, usually thirty days. *See*, *e.g.*, 59 Fed. Reg. 61918. A computer randomly selects the set number of applicants from the pool, hence the term "lottery". 22 C.F.R. § 42.33(c). The lottery winners are notified in the summer and are instructed on how to apply for an immigrant visa. *See*, *e.g.*, 61 Fed. Reg. 58730, 58731. The lottery visa offer is only good until the last day of the fiscal year in which the application was submitted. 22 C.F.R. §§ 42.33(e), (g). Thus, a 1995 applicant, notified in the summer of 1995, had from October 1995 until September 30, 1996 to complete the application process. 59 Fed. Reg. 61918, 61919-20. Persons selected for DV Program visas, who reside in the United

States, may petition for an adjustment of status under 8 U.S.C. § 1255(a). The caveat is that the applicant must complete the process, application and adjudication, before time expires because a visa can only be issued during the relevant fiscal year. 8 U.S.C. § 1151(a)(3); 8 U.S.C. § 1153(c)(1), 8 U.S.C. § 1154(a)(1)(I)(ii).

The *Iddir* appellants, Hakim & Hadjira Iddir, and Juan A. Llivi, were selected for the DV Program lottery in 1998. In the 1998 lottery, there were 97,319 entries for 55,000 available diversity visas, however, only 51,000 of those visas were actually distributed. The 1998 DV program fiscal year ran from October 1, 1997 through September 30, 1998. After being selected in the lottery, the appellants applied for adjustment of status. In September 1997, the INS informed Llivi that there was a significant wait for interviews. Llivi was not contacted again until December 4, 1998—after the fiscal year ended on Sept. 30, 1998—when he received notice of an interview to be conducted on December 24, 1998. It was not until January 26, 1999, that the INS district director informed Llivi that he could not grant the petition because time had expired.

The Iddirs' story is very similar to Llivi's; they too received a letter informing them of the wait for interviews in September 1997 and were not contacted again until October 29, 1999. The INS contacted the Iddirs to request re-submission of their fingerprints. Finally, they received an interview on May 3, 2000—again after the fiscal year ended on Sept. 30, 1998—and heard the same excuse as Llivi, time had expired. The Iddirs also claimed that the hearing officer explained the delay was caused by someone misplacing their file.

The *Kudina* appellants applied for various DV Program lotteries from 1996 through 1998. The lead plaintiff-appellant, Tatiana Kudina, entered the 1999 DV Program lottery and was selected. Kudina applied in December 1998,

and in September 1999 received notice from the INS that she needed to submit another set of fingerprints. Kudina did not hear from the INS again until February 9, 2000, when the INS informed her that her application had expired.

The Malukas entered and were selected for the 1998 DV Program lottery, but their status was not adjudicated in 1998.

The Sanchezes entered and were selected in the 1999 lottery, but they too did not have their status adjudicated in the applicable time period.

The Niculescus entered the 1998 DV Program lottery and were selected. Maria Niculescu's application was processed and she was interviewed on the last day of the fiscal year, September 30, 1999. Maria was awarded permanent resident status the same day. However, her children, Radu-Liviu and Silviu-Vlad, currently residing in Romania, were denied adjustment of status because their interviews were not held until August 1998 at the Embassy in Bucharest.

The Ogunkoyas entered and were selected for the 1996 lottery. They received interviews in March of 1996, but on September 30, 1996 they were informed that the INS had requested additional documents on April 22, 1996. The Ogunkoyas submitted the necessary documents the same day. On February 27, 1997, they were informed that time had expired and their applications denied.

Mario Romanovic entered and was selected under the 1998 program, along with his wife Marija. The Romanovics received interviews on July 14, 1999, and their applications were denied the same day.

Nelly Victoria Suyo participated in the 1997 lottery, was selected, and submitted an application in January 1997. Suyo's application was denied on February 19, 1999.

**ANALYSIS**

The INS, which is no stranger to administrative problems, waited until after the prescribed time period to hear the plaintiffs' petitions for adjustment of status. Then the INS summarily rejected the petitions, not on the merits, but on the grounds that time within which the petitions had to be heard expired. *See* Peter H. Schuck, *Reform That Leads to Chaos*, N.Y. TIMES, May 23, 2002, at A31 (noting "[w]ith the possible exception of the I.R.S., the Immigration and Naturalization Service is the least popular agency in the federal government."); *Farewell to the I.N.S.*, N.Y. TIMES, April 27, 2002, at A16; Eric Schmitt, *Vote in House Strongly Backs An End to I.N.S.*, N.Y. Times, April 26, 2002, at A1. The INS has had serious problems with backlogs of applications before. *See* Eric Schmitt, *Backlog and Wait for Green Card Decline*, N.Y. TIMES, Jan. 19, 2002, at A12. However, the key difference here is that the DV Program applicants had *time sensitive* applications that needed to be processed expeditiously, yet, the INS specifically told these applicants not to contact the INS because doing so would delay their applications further. Meanwhile, the INS did not take a single step toward processing any of the applications, and, in one situation, may have even lost the application for a period of time.

A.  *Standard of Review*

We review a district court's dismissal for lack of jurisdiction *de novo. United States v. Bank of Farmington*, 166 F.3d 853, 859 (7th Cir. 1999). In the context of a motion to dismiss for lack of subject matter jurisdiction, we accept as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff. *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993). To determine if subject matter jurisdiction exists, we look

beyond the allegations in the complaint to any evidence that has been submitted regarding jurisdiction. *Id*.

B. *Statutory Bar to Jurisdiction: 8 U.S.C. § 1252(a)(2)(B)*

Section 1252(a)(2)(B) provides: "Notwithstanding any other provision of law, no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section . . . 1255 of this title, or (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ." In the district courts, and in federal courts throughout the United States, the INS argued that 8 U.S.C. § 1252(a)(2)(B)(i) precluded any federal court from having jurisdiction over a suit involving the DV Program and denials of adjustment of status due to expiration of the time period. Upon further reflection, the Solicitor General has now reversed that position and concedes that we do have jurisdiction to hear immigration cases in which the INS wholly fails to adjudicate an applicant's status and either grant or deny relief. Defendants-Appellees' Brief at 29. Nevertheless, the agreement of the parties as to the inapplicability of the jurisdictional bar does not end our inquiry since we are the first circuit to address the issue in this context.

The jurisdiction prohibition in 8 U.S.C. § 1252(a)(2)(B), is construed using longstanding principles of statutory construction. First, congressional intent to limit federal jurisdiction, generally, must be clear and convincing in order to preclude judicial review. *See Board of Governors of the Federal Reserve System v. Mcorp. Financial Inc.*, 502 U.S. 32, 44 (1991); *Traynor v. Turnage*, 485 U.S. 535, 542 (1988) (plurality opinion); *Block v. Community Nutrition Institute*, 467 U.S. 340, 349-51 (1984); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141 (1967). Second, there is a general presumption in favor of judicial review of ad-

ministrative acts. *See INS v. St. Cyr*, 533 U.S. 289, 289-90 (2001); *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 498 (1991); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986); *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975); *Barlow v. Collins*, 397 U.S. 159, 166-67 (1970). Lastly, we ordinarily resolve ambiguities in favor of the aliens and find jurisdiction to hear the grievance. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *INS v. Errico*, 385 U.S. 214, 225 (1966); *Costello v. INS*, 376 U.S. 120, 128 (1964); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948).

The term "judgment" is used more than twelve times throughout the Immigration and Naturalization Act (INA), and eight of those references denote "judgments" as court orders. *See* 8 U.S.C. § 1101(a)(48)(A); 8 U.S.C. § 1158(b)(2)(A)(ii); 8 U.S.C. § 1227(a)(2)(D); 8 U.S.C. § 1229a(c)(3)(B); 8 U.S.C. § 1231(b)(3)(B)(ii); 8 U.S.C. § 1324b(i)(2); 8 U.S.C. § 1451(f); 8 U.S.C. § 1503(a); *see also Atlantic Cleaners & Dryers, Inc. v. United States*, 286 U.S. 427, 433 (1932) (holding that a word that appears in a statutory section is generally considered to have the same meaning throughout the section); *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1141-43 (9th Cir. 2002) ("This suggests that Congress similarly intended the word 'judgment' in § 1252(a)(2)(B)(i) to refer only to discretionary determinations."); *Prado v. Reno*, 198 F.3d 286, 288-91 (1st Cir. 1999) (holding "the section [1252(a)(2)(B)] bars the exercise of jurisdiction only where the BIA decision as to which review is sought is a 'judgment regarding the granting of relief under' one of the enumerated sections"). The section headings in 1252 also demonstrate that Congress sought only to preclude review of orders or judgments, pertaining to actual discretionary decisions. 8 U.S.C.

§ 1252 (denoted as "Judicial review of orders of removal")[1]; 8 U.S.C. § 1252(a)(2)(B) (pertaining to "Denials of discretionary relief"); *see also Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947) (stating that it is useful to look at the title of a statute for interpretive purposes, but the title "cannot limit the plain meaning of the text").

Applying these principles to the facts at hand, we find section 1252(a)(2)(B)(i), by its use of the terms "judgment" and "decision or action", only bars review of actual discretionary decisions to grant or deny relief under the enumerated sections, including section 1255. *See Paunescu v. INS*, 76 F. Supp. 2d 896, 899-902 (N.D. Ill. 1999) (outlining the difference between discretionary action or decision, such as a denial of relief or decision to defer, and complete inaction and failure to make any decision). Although, the INS used the term "denial" in its notice to the appellants, the "denial" of their applications was not a decision on the merits. *See Nyaga v. Ashcroft*, 186 F. Supp. 2d 1244, 1250-53 (N.D. Ga. 2002) ("Plaintiff is not seeking a review of a decision or action, which would be barred, but is seeking remediation of the lack of action, which is not barred."). The INS never held a hearing or made any determinations

---

[1] A number of district courts have concluded that the designation of section 1252 as "Judicial orders of removal" confines the subsequent limitations in the subsections to removal proceedings. *See Talwar v. INS*, 2001 WL 767018, at *3-5 (S.D.N.Y. July 9, 2001); *Mart v. Beebe*, 94 F. Supp. 2d 1120, 1124 (D. Or. 2000); *Shanti, Inc. v. Reno*, 36 F. Supp. 2d 1151, 1158 (D. Minn. 1999); *Burger v. McElroy*, 1999 WL 203353, at *4 (S.D.N.Y. April 12, 1999) *cf. Abboud v. INS*, 140 F.3d 843, 846-47 (9th Cir. 1998); *but see*, *CDI Information Services Inc. v. Reno*, 278 F.3d 616 (6th Cir. 2002) (concluding that "section 1252(a)(2)(B)(ii) is not limited to discretionary decisions made within the context of removal proceedings."); *Van Dinh v. Reno*, 197 F.3d 427, 432 (10th Cir. 1999). That issue is beyond the scope of our narrow inquiry, as the result in this case would be the same either way.

regarding the appellants' eligibility or qualifications for adjustment of status. According to the INS, the decision to "deny" the applications was not discretionary; once time had elapsed, the INS claims it could not issue the visas regardless of the merits of the petitions. *See Iddir*, 166 F. Supp. 2d at 1255-56 ("The jurisdictional language in Section 242 does not divest this court of jurisdiction in the case of an administrative oversight or delay, which causes the INS, in essence, to lose the power to adjudicate the application.").

This situation is distinguishable from one in which the INS does award or deny relief. If the appellants had their applications heard and were denied adjustment of status under section 1255 on the merits, that would be a "judgment" or "decision or action" likely covered by section 1252(a)(2)(B). *See McBrearty v. Perryman*, 212 F.3d 985, 986-87 (7th Cir. 2000) (concluding that section 1252(a)(2)(B) barred review of the district director's decision to deny the plaintiffs' applications for adjustment of status). In contrast, if a DV Program lottery winner timely and properly applies for adjustment of status and the application is simply never heard, the subsequent denial of the application on grounds of expiration is neither a "judgment" nor a discretionary "decision or action" precluding review.

## C. Exhaustion

Generally, an immigration plaintiff is required to pursue and exhaust all administrative remedies before seeking relief in federal court because there are explicit statutory requirements in certain sections of the INA and a comprehensive administrative review scheme exists. *See, e.g.*, 8 U.S.C. § 1252(d) (providing for judicial review of *final orders* where the alien has exhausted administrative remedies); *Singh v. Reno*, 182 F.3d 504, 511 (7th Cir. 1999); *Mojsilovic v. INS*, 156 F.3d 743, 748 (7th Cir. 1998);

*Castaneda-Suarez v. INS*, 993 F.2d 142, 144-45 (7th Cir. 1993); *see also Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 579 (1989); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938). However, exhaustion may be excused if: (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an "indefinite timeframe for administrative action"; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised. *McCarthy v. Madigan*, 503 U.S. 140, 146-48 (1992); *Bowen v. City of New York*, 476 U.S. 467, 483 (1986); *Mathews v. Diaz*, 426 U.S. 67, 76 (1976); *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973); *Houghton v. Shafer*, 392 U.S. 639, 640 (1968); *McNeese v. Board of Ed. for Community School Dist.*, 187, 373 U.S. 668, 675 (1963).

The appellants need only show that one of the four exceptions outlined above applies. It appears that at least three apply. The government acknowledged that it has no idea when, if ever, the INS may institute removal proceedings against the appellants. This is the quintessential example of an "indefinite timeframe for administrative action". *McCarthy*, 503 U.S. at 147. The government asserts that "any claims arising out of the consideration of their applications, [can be challenged] in administrative removal proceedings when and if the INS commences such proceedings." Defendants-Appellees' Brief at 22-23 (citing 8 C.F.R. § 245.2(a)(5)(ii) as support). Yet, in support of other arguments, the government states that it wholly lacks the ability to grant visas to the appellants regardless of the merits of their applications. Thus, renewing the applications under section 245.2(a)(5)(ii) would be futile, as the INS is unable to grant the relief requested because the DV Program visa numbers have ex-

pired. The appellants need not have pursued and exhausted their claims at some distant future time through an administrative process that could accord them no relief.

D. *Mandamus*

District courts have mandamus jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available. *Scalise v. Thornburgh*, 891 F.2d 640, 648 (7th Cir. 1989).

1.  clear right to have their cases adjudicated

To determine if the appellants have a right to the adjudication of their cases, we look to the statute in question to determine what Congress directed. *See United States v. Markgraf*, 736 F.2d 1179 (7th Cir. 1984) (noting that when determining Congressional intent courts look to "the language of the statute; the legislative history; and the interpretation given by the administrative agency charged with enforcing the statute."). The section on diversity immigration visas repeatedly commands the Attorney General, in nondiscretionary language, to do a variety of tasks related to the DV Program. 8 U.S.C. §§ 1153(c)(1)(A), (c)(1)(B)(i), (c)(1)(B)(ii), (c)(1)(C), (c)(1)(D), (c)(1)(E)(iv), (e). Congress selected the term "shall" to describe the Attorney General's various duties in administering the DV Program. 8 U.S.C. § 1153(e)(2) ("Immigrant visa numbers made available under subsection (c) of this section (relating to diversity immigrants) *shall be issued* to eligible qualified immigrants strictly in a random order established

by the Secretary of State for the fiscal year involved.") (emphasis added). The term "shall" denotes a clear directive, a command, as opposed to the terms "may" or "in his discretion" used in a statute such as 8 U.S.C. § 1255(a). *E.g.*, *Miller v. French*, 530 U.S. 327, 337 (2000) ("The stay is 'automatic' once a state defendant has filed a § 3626(b) motion, and the statutory command that such a motion 'shall operate as a stay during the [specified time] period' indicates that the stay is mandatory *throughout* that period of time.") (emphasis in original); *Kuhlmann v. Wilson*, 477 U.S. 436, 449 n.11 (1986) ("Sensitivity to the interests implicated by federal habeas corpus review is implicit in the statutory command that the federal courts 'shall . . . dispose of the matter as law *and justice* require.'") (emphasis in original); *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982) ("The words chosen by Congress ["*shall pay* to the seaman' the sums specified '*for each and every day* during which payment is delayed'"], given their plain meaning, leave no room for the exercise of discretion either in deciding whether to exact payment or in choosing the period of days by which the payment is to be calculated.") (emphasis in original); *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 168-72 (1978); *Parker Pen Co. v. Federal Trade Commission*, 159 F.2d 509, 510 (7th Cir. 1946) ("'The findings of the Commission as to the facts, if supported by evidence, shall be conclusive.' Precedent sustains this statutory command."); *cf. Ayers v. Coughlin*, 530 N.E.2d 373, 374 (N.Y. 1988) (construing the statutory term "forthwith" to mean immediately). Additionally, the applicable regulations provide that the INS shall process and select immigrants from the petitions submitted. 22 C.F.R. § 42.33 ("Envelopes selected pursuant to paragraph (c) of this section *shall* be opened and reviewed. Petitions which are legible and contain the information specified in paragraph (b) of this section *shall* be approved for further consideration.") (emphasis added).

The INS asserted that the appellants, and, for that matter, any DV Program applicant, have no right to have their applications adjudicated. We disagree. Based upon the directive language Congress chose to employ in the statute and the applicable regulations, it is evident that the appellants have a right to have their cases adjudicated. *See Nyaga*, 186 F. Supp. 2d at 1252-53; *Iddir*, 166 F. Supp. 2d at 1258; *Paunescu*, 76 F. Supp. 2d at 900-01.

2.  the INS has a duty to adjudicate

Whether the INS has a duty to adjudicate these applications is a more complex question. The INS claims that the visas expired at the end of the fiscal year, thus, the INS cannot issue the visas regardless of the outcome of any adjudication. The appellants counter by pointing out that the INS has, in the past, adjudicated the status of DV Program participants after the end of the fiscal year of the program and issued visas. *See Paunescu*, 76 F. Supp. 2d at 902; *Marcetic v. INS*, 1998 WL 173129, at *2 (N.D. Ill. April 6, 1998). The district court in *Nyaga* recognized that the issues of duty and potential relief are entangled in this unique statutory situation. *Nyaga*, 186 F. Supp. 2d at 1252-53. The district court in *Iddir* also flagged this issue, but analyzed it under the mootness doctrine.

The power to confer citizenship upon aliens rests solely with Congress, as delegated to the Executive branch to administer. *See, e.g.*, *INS v. Pangilinan*, 486 U.S. 875, 883-84 (1988). While a federal court does not have the authority to make someone a citizen, it does have the power to require the Executive to carry out Congress' commands. Congress gave the Attorney General, and thereby his delegatee the INS, the power to administer the DV Program and the duty to adjudicate the applications of the participants. *See* 8 U.S.C. § 1153(c); 8 U.S.C. § 1154(a)(1)(I); 22 C.F.R. § 42.33. The relevant statutes and regulations

confirm that the INS did have the duty to adjudicate the appellants' applications in a reasonable period of time. *See Nyaga*, 186 F. Supp. 2d at 1252-53; *Iddir*, 166 F. Supp. 2d at 1258; *Paunescu*, 76 F. Supp. 2d at 900-01. The reason the appellants are before this court is because the INS never managed to fulfill the duty Congress placed upon it.

Nevertheless, the relief the appellants currently seek is illusory, because even if the INS adjudicated the applications today, visas could not be issued. *See Iddir*, 166 F. Supp. 2d at 1259. Despite past practices of the agency, the statute unequivocally states that the applicants only remain eligible "through the end of the specific fiscal year for which they were selected."[2] 8 U.S.C. § 1154(a)(1)(I)(ii); 8 U.S.C. § 1153(c)(1); 22 C.F.R. § 42.43(e). Based on the statutory deadline set by Congress, the INS lacks the statutory authority to award the relief sought by the plaintiffs. Thus, here the mandamus remedy is not appropriate because one of the conditions for such extraordinary relief—the clear duty to adjudicate the petitions—is not present. *Cf. Scalise*, 891 F.2d at 647-48; *Save the Dunes Council v. Alexander*, 584 F.2d 158, 162 (7th Cir. 1978).

The INS points out that a number of avenues for the appellants to gain citizenship remain. That other potential methods of relief exist is beside the point and does not mitigate and cannot countenance the INS' misfeasance

---

[2] It would be a different case had the district court ordered the INS to adjudicate the appellants' status *while* the INS maintained the statutory authority to issue the visas. *See Paunescu*, 76 F. Supp. 2d at 902-03; *Marcetic*, 1998 WL 173129, at *2-3. In such a situation, the INS would be on notice to reserve visas and must complete the task, as ordered, before time expires. Allowing the INS to claim inability to issue visas at that point would impinge the authority of the court. *See Paunescu*, 76 F. Supp. 2d at 902-03; *Marcetic*, 1998 WL 173129, at *2-3.

in this case. "This Court has frequently articulated the 'great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided.'" *Brock v. Pierce County*, 476 U.S. 253, 260 (1986) (quoting *United States v. Nashville, C. & St. L.R. Co.*, 118 U.S. 120, 125 (1886)). Indeed, the appellants may all, once again, apply for DV Program visas, win the lottery, and hope their applications will actually be adjudicated by the INS before the statutory deadline passes. The appellants may also petition Congress for a private bill, which would direct the INS to grant them the relief they seek. *See*, *e.g.*, H.R. 4863, 107th Cong. (2002) ("For the relief of Rodney Allan Green and Wendy Sharon Green"); H.R. 4829, 107th Cong. (2002) ("For the relief of Olivera Goronja"); H.R. 4713, 107th Cong. (2002) ("For the relief of Laura Maldonado Caetani"); S. 2472, 107th Cong. (2002) ("For the relief of Rosemary Bichage"). Finally, the appellants, or other groups focused on immigration, can lobby Congress to alter the statutory scheme in 8 U.S.C. §§ 1153(c) and 1154(a)(1)(I) to allow visas to be issued to qualifying DV Program lottery winners after the fiscal year ends, if the INS fails to timely adjudicate their applications. *Cf*. H.R. 3894, 107th Cong. (2002) ("To amend the Immigration and Nationality Act to restore fairness to immigration law, and for other purposes.").

## CONCLUSION

Because we conclude that the district courts lack mandamus jurisdiction to order the requested relief, the dismissals of the appellants' cases are AFFIRMED, for the reasons stated herein. *Duro lex, sed lex.*

FLAUM, *Chief Judge.* I join in the majority's ultimate judgment. I agree that no statutory bar to jurisdiction exists and that the plaintiffs' failure to exhaust administrative remedies would be excused due to the futility of any further administrative appeal. Further, I agree that because the plaintiffs are no longer eligible to receive visas, we must, regrettably, affirm the district courts' decisions. However, because I believe that the cases must be analyzed and affirmed on mootness grounds, I write separately.

The majority did not employ the mootness doctrine, but instead found that, because the INS no longer owed plaintiffs a clear duty to adjudicate their visa applications, the district court lacked mandamus jurisdiction to compel the INS to adjudicate plaintiffs' claims.[1]

I believe that because the INS lacks the capability to issue visas to DV lottery winners after the fiscal year for which they were selected to apply ends, no viable remedy is available to plaintiffs and, therefore, their claims are moot. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of the litigants in the case before them."); *McKinney v. Indiana Michigan Power Co.*, 113 F.3d 770, 772 (7th Cir. 1997) (a case is moot if "there is no possible relief which the court could order that would benefit the party seeking it.") (internal citations omitted). Although the line I draw between lack of mandamus jurisdiction and mootness is fine—I stand but a hair's breadth away from the majority—I think that it is the INS's lack of *power* to grant effectual relief—not its lack of *duty*—that makes the claims nonjusticiable. Therefore,

---

[1] "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. §1361.

I conclude that the cases should be dismissed for mootness, not for lack of mandamus jurisdiction. Moreover, because the "case or controversy" requirement of Article III of the United States Constitution prohibits federal courts from deciding moot cases, U.S. Const. art. III, §2, in my view the district court did not have jurisdiction under Article III to decide whether it had statutory jurisdiction under the mandamus jurisdiction statute. *See Rosetti v. Shalala*, 12 F.3d 1216, 1232 (3d Cir. 1993).

Individuals selected through the DV program during a particular fiscal year "remain eligible to receive visas only through the end of the specific fiscal year for which they were selected." 8 U.S.C. §1154(a)(1)(I)(ii)(II). As the majority correctly suggests, although the INS had a duty to adjudicate plaintiffs' claims during their term of eligibility, its failure to do so does not extend the statutorily limited period for which they were eligible. However, I believe that it is not the agency's duty to the plaintiffs that was cut short when the relevant fiscal years ended, as the majority seems to indicate, but the plaintiffs' statutory eligibility to receive the relief that they request. See *Sadowski v. INS*, 107 F. Supp.2d 451, 454 (S.D.N.Y. 2000) ("When a relevant deadline for adjustment of status has passed, a request for relief is deemed plainly moot, depriving district courts of subject matter jurisdiction."). INS regulations provide explicitly that the "the eligibility for a [diversity] visa . . . ceases at the end of the fiscal year in question. Under no circumstances may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility." 22 C.F.R. §42.33.

Because the plaintiffs in the two cases below did not present to the district court a live case or controversy, *see Stotts v. Community Unit School Dist. No. I*, 230 F.3d 989, 991 (7th Cir. 2000), I would affirm the decisions to deny relief on mootness grounds.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*