**Tony OMOGIATE, Petitioner–Appellant,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE and Brian R. Perryman, District Director, Respondents–Appellees.**

No. 02–1799.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 16, 2002.[*]

Decided March 10, 2003.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before FAIRCHILD, EVANS, and WILLIAMS, Circuit Judges.

## ORDER

Facing imminent deportation, Tony Omogiate, a citizen and native of Nigeria, sought a writ of mandamus from the district court to compel the Immigration and Naturalization Service to approve his application for adjustment of status to permanent residency. The district court dismissed his pro se complaint for lack of subject matter jurisdiction, and we affirm.

### I. Background

Omogiate arrived in the United States from Nigeria on June 12, 1993. Upon arrival, he presented to immigration officers a Liberian birth certificate with the name "Prince Anthony Moore." The INS officers suspected that the certificate was fraudulent and placed Omogiate in exclusion proceedings. At the same time, they deferred his application for admission for a hearing before an immigration judge to take place three months later. Despite having received notice of the hearing, Omogiate did not attend; rather, he says, he left the United States on June 26. The INS, however, has determined that there is no proof that he ever left. When Omo-

giate did not appear for his hearing, on September 22, 1993 the immigration judge ordered him excluded and deported *in absentia* for lack of a valid entry document. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I).

According to Omogiate, he reentered the United States without inspection in 1994 and has been in the country ever since. In 1996 he married an American citizen with whom he now has two children, and in March 1997 Omogiate's wife submitted a I–130 visa petition, seeking to classify Omogiate as an immediate family member. Omogiate simultaneously applied for adjustment of status to permanent residency. *See* 8 U.S.C. § 1255(i). He paid the required application fee plus a $1000 penalty so that he could remain in the United States while his application was being processed. Despite the existence of the 1993 deportation order (about which the INS seemed unaware), the INS granted the visa petition, accepted Omogiate's application fee and penalty, and interviewed Omogiate and his wife in conjunction with the adjustment-of-status application. Following the interview, Omogiate repeatedly inquired about his application at the INS office in Chicago. During the last of these inquiries in October 2000, the INS discovered that Omogiate had been ordered deported in 1993 and detained him. In November 2000, an immigration judge denied bond on the ground that Omogiate was subject to a final order of exclusion and deportation.

After his detention, Omogiate sought permission to reapply for admission after deportation, *see* 8 U.S.C. § 1182(a)(9), and

for a waiver of inadmissibility, *see* 8 U.S.C. § 1182(i). In June 2001, INS district director Brian Perryman declined to grant Omogiate a waiver of inadmissibility or permission to reapply for admission. Perryman concluded that several negative factors–namely, Omogiate's initial fraudulent entry to the country, his failure to appear for the hearing, his lack of proof that he ever left the country, and his illegal stay until his detention in 2000–outweighed any positive factors favoring his admission. Further, Perryman found that no extreme hardship to Omogiate's family would be caused by his deportation. In particular, Perryman noted that although Omogiate claimed that his family needed his financial support, he submitted no records showing that he had ever been employed since his arrival in the United States. The following month, on July 31, 2001, Perryman denied Omogiate's application for adjustment of status because Omogiate had been "proven to be inadmissible to the United States."

In October 2001, Omogiate filed a petition for review in this court, No. 01–3725, which we dismissed for lack of jurisdiction because the petition did not seek review of an INS order, but rather appeared to challenge only the conditions of his confinement. Next, in November 2001, Omogiate filed his "Complaint for a Writ in the Nature of Mandamus" in the district court seeking review of the District Director's denial of his application for adjustment of status. Omogiate alleged that the district court had jurisdiction under 28 U.S.C. § 2201 (the declaratory judgment statute) and § 2241 (the habeas corpus statute).[1]

---

**1.** Around the same time, Omogiate filed a petition for habeas corpus under 28 U.S.C. § 2241 also challenging the INS's denial of his adjustment-of-status application. The petition was assigned to a different district judge, who likewise dismissed the petition for lack of subject matter jurisdiction pursuant to

8 U.S.C. § 1252(a)(2)(B). *Omogiate v. Ashcroft*, No. 02 C 1057 (N.D.Ill. Sept. 13, 2002) (unpublished order). Further, the district court concluded, the Supreme Court's recent decision in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), holding that the INS cannot detain an alien indefi-

The district court dismissed the "complaint" on the ground that 8 U.S.C. § 1252(a)(2)(B) of the INA–as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), *see* Pub.L. No. 104–208, Division C, 110 Stat. 3009–546 (1996)– deprived the court of jurisdiction to review the District Director's adjustment-of-status decision. The district court also noted that, in any event, mandamus can be granted only when the petitioner has a clear right to the relief sought and has exhausted his administrative remedies, which Omogiate had failed to do here. Omogiate next filed a petition for review in this court, No. 02–1429, which we construed as a timely notice of appeal from the district court's dismissal of his mandamus complaint. Omogiate remains in INS custody awaiting deportation.

## II. Analysis

We review de novo the district court's dismissal for lack of subject matter jurisdiction. *Iddir v. INS*, 301 F.3d 492, 496 (7th Cir.2002). Our resolution of the jurisdictional issue turns on whether the provision of IIRIRA, § 1252(a)(2)(B), precluding judicial review of certain matters applies to the denial of Omogiate's application for adjustment of status.

Section 1252(a)(2)(B), which we have described as a "door-closing statute," precludes *any* court from reviewing certain decisions committed to INS discretion, including denials of status adjustment under § 1255. *McBrearty v. Perryman*, 212 F.3d 985, 986–87 (7th Cir.2000). Section 1252(a)(2)(B) provides in pertinent part:

> Notwithstanding any other provisions of law, no court shall have jurisdiction to review-(i) any judgment regarding the granting of relief under section . . . 1255 of this title, or (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General.

8 U.S.C. § 1252(a)(2)(B). Omogiate asked the district court to review the District Director's July 31, 2001 decision denying him a status adjustment under 8 U.S.C. § 1255. In the district court the INS argued, and the district court agreed, that this provision precluded the court from exercising jurisdiction over Omogiate's complaint. In this court, however, the INS reverses its position asserting, with little elaboration, that because Omogiate's order of exclusion became final on October 4, 1993, "his case is unaffected by the changes to the judicial review provision of the INA made by IIRIRA," and therefore § 1252(a)(2)(B) did not preclude jurisdiction to review the denial of adjustment of status.[2] (Respondents' Br. at 11.) We agree with the district court.

nitely pending removal, did not apply to Omogiate because he is under a final order of exclusion. *See, e.g., Hoyte–Mesa v. Ashcroft*, 272 F.3d 989, 991 (7th Cir.2001). On November 7, 2002, Omogiate voluntarily dismissed his appeal from the district court's judgment under Fed. R.App. P. 42(b).

2. The INS argues that the district court had jurisdiction to review the denial of adjustment of status, but that such denial was adequately supported. It suggests that the source of jurisdiction was 28 U.S.C. § 1331 (federal question). A peripheral reference to that theory is found in *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 477, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). *Cheng Fan Kwok v. INS*, 392 U.S. 206, 208, 216, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968), appears to recognize that district courts had jurisdiction to review INS orders denying ancillary relief, not entered in the course of a deportation proceeding nor being denials of motions to reopen such proceedings. We rely, however, as did the district court, on statutory preclusion of jurisdiction here.

Congress enacted IIRIRA on September 30, 1996, in large part to shield discretionary immigration decisions from judicial review altogether. *See Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 486, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (*"AADC"*) ("[M]any provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts ... that can fairly be said to be the theme of the legislation."). IIRIRA's amendments, including the judicial-review procedures of § 1252, took effect on April 1, 1997. IIRIRA § 309(a), Pub.L. 104–208, Division C, 110 Stat. 3009-625; *see also* Effective Dates of 1996 Acts Note following 8 U.S.C. § 1101. The amendments, however, generally do not apply to an alien who "is in exclusion or deportation proceedings" before the Act's April 1, 1997 effective date. IIRIRA § 309(c)(1). Those aliens' proceedings, and the judicial review thereof, will "continue to be conducted" without regard to IIRIRA. Section § 309(c)(1) of IIRIRA specifically provides:

(c) TRANSITION FOR CERTAIN ALIENS–

(1) GENERAL RULE THAT NEW RULES DO NOT APPLY. Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings before the Title III–A effective date-

(A) the amendments made by this subtitle shall not apply, and

(B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

IIRIRA § 309(c)(1), Pub.L. 104–208, Division C, 110 Stat. 3009–625, as amended by Pub.L. 104–302, 110 Stat. 3657 (Oct. 11, 1996), and Pub.L. 105–100, 111 Stat. 2198 (Nov. 19, 1997); *see also* Effective Dates of 1996 Acts Note following 8 U.S.C. § 1101.

■ IIRIRA's transitional rules do not apply to Omogiate's status-adjustment challenge. Although Omogiate literally was in exclusion or deportation proceedings "before" April 1, 1997, his proceedings were no longer pending on that date. *See AADC,* 525 U.S. at 483, 119 S.Ct. 936 (describing transitional cases under 309(c)(1) as "cases pending on the effective date of IIRIRA"); *Zadvydas v. Underdown,* 185 F.3d 279, 287 n. 7 (5th Cir.1999) (concluding that IIRIRA applies to aliens whose final deportation order predated IIRIRA), *vacated on other grounds sub nom, Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). To the contrary, Omogiate's exclusion proceeding concluded years before IIRIRA's enactment, culminating with an order of deportation entered *in absentia* on September 22, 1993. The order became final when Omogiate failed to appeal to the BIA. 8 U.S.C. § 1105a(c)(1994); 8 C.F.R. § 3.38(b)(1993).

■ True, Omogiate's final order of deportation was entered before IIRIRA's enactment, but Omogiate is not challenging that order here. Rather, he is challenging the District Director's refusal to adjust his status in 2001 based on his marriage to a United States citizen. Omogiate's application for a status adjustment four years after he was ordered deported was separate and distinct from his exclusion proceeding. He did not move to reopen those proceedings; indeed, he neglected to mention the existence of the earlier proceeding or deportation order in his application. No doubt Omogiate was illegally present in the United States, but he was not in any exclusion or deportation proceedings on April 1, 1997, and thus IIRIRA's amendments apply to his request for an adjust-

ment of status.[3]

■ Where, as here, the District Director heard and denied the application for an adjustment of status on its merits, § 1252(a)(2)(B), as amended by IIRIRA, precludes judicial review. *See Iddir,* 301 F.3d at 497–98; *McBrearty,* 212 F.3d at 986–87. Omogiate argues that § 1252(a)(2)(B) does not preclude review of "constitutional violations by the INS in making discretionary decisions or judgments." (Petitioner's Br. at 11.) Indeed, we have recognized that such "door-closing statutes . . . are often interpreted as being inapplicable to constitutional challenges." *McBrearty,* 212 F.3d at 987. But Omogiate has raised no substantial constitutional claim. Rather, he contends that § 1255(i) mandated that the INS adjust his status because of his marriage to a United States citizen and his payment of the requisite penalty fee. That is simply not the case. The decision whether to grant an adjustment of status is committed to the INS's discretion. 8 U.S.C. § 1255(i)(2) ("Upon receipt of such an application and the sum hereby required, the Attorney General *may* adjust the status of the alien . . .") (emphasis added); *Dashto v. INS,* 59 F.3d 697, 704 (7th Cir.1995) ("Granting an adjustment of status is an extraordinary act and a matter of grace.") (internal quotations omitted).

■ Omogiate's attempt to invoke the mandamus jurisdiction of the district court is likewise unavailing. We have suggested that a district court may properly invoke mandamus jurisdiction in immigration cases where the INS refuses to adjudicate a status-adjustment application despite having a clear duty to do so. *See Iddir,* 301 F.3d at 499. But in Omogiate's case, the INS adjudicated his application and denied it. He cannot now utilize mandamus to compel a favorable disposition of that application. Mandamus relief may be ordered only if three conditions are present: (1) the plaintiff has a clear right to the relief sought; (2) the defendant has a duty to do the act in question; and (3) no other adequate remedy is available. *Id.; Blaney v. United States,* 34 F.3d 509, 513 (7th Cir.1994). Omogiate has no clear right to a discretionary status adjustment.

Because § 1252(a)(2)(B) precludes judicial review of the District Director's status-adjustment determination, and Omogiate has not presented a constitutional issue, we AFFIRM the district court's judgment dismissing Omogiate's complaint for lack of subject matter jurisdiction.

---

**3.** Even if Omogiate's status-adjustment application, filed in March 1997, could be somehow construed as a motion to reopen so as to say that he was in deportation proceedings on the April 1, 1997 effective date, and thus the denial was subject to pre-IIRIRA judicial review rules, his complaint seeking review of that denial was not only filed in the wrong court, but it was untimely. Under pre-IIRIRA rules, a petition for review must be filed in the circuit court within 90 days of the INS order. 8 U.S.C. § 1105a(a)(1) (1994). Omogiate filed his complaint in the district court on November 26, 2001, more than 90 days after the District Director's July 31, 2001 decision denying his application.