In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 21-3171

AKASH SHAHI, *et al.*,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES DEPARTMENT OF STATE, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20 C 7590 — **Jorge L. Alonso**, *Judge*.

_____

ARGUED APRIL 21, 2022 — DECIDED MAY 6, 2022

_____

Before EASTERBROOK, ROVNER, and BRENNAN, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The diversity-visa program makes as many as 55,000 visas available annually to citizens of countries with low rates of immigration to the United States. 8 U.S.C. §§ 1151(e), 1153(c). More than 55,000 people apply for these visas every year, so the State Department holds a lottery to determine priority. People in the top 55,000, plus some others selected to ensure that enough will qualify

to fill out the authorized number, are invited to seek "adjudication" of their applications—that is, to submit paperwork and sit for interviews so that the State Department can confirm their eligibility (such as, for example, the absence of disqualifying convictions). Persons whose applications are successfully adjudicated by the end of the fiscal year receive visas and permanent-residence status.

The proviso "by the end of the fiscal year" is important. Applicants "who qualify, through random selection, for a visa under section 1153(c) of this title shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected." 8 U.S.C. §1154(a)(1)(I)(ii)(II). See also 31 U.S.C. §1102 (defining "fiscal year"); 22 C.F.R. §42.33(d) (an approved petition "will be valid for a period not to exceed Midnight on the last day of the fiscal year for which the petition was approved"). This fiscal-year limit has caused many an application to fail, because it means that bureaucratic inertia or foul-ups have the same effect as affirmative decisions that applicants are ineligible.

Twenty years ago, some aliens whose attempts to obtain visas timed out because of delay at the agency sued, but *Iddir v. INS*, 301 F.3d 492 (7th Cir. 2002), held that the fiscal-year limit cannot be extended by a judicial order. Other circuits have reached the same conclusion. See, e.g., *Ermuraki v. Renaud*, 987 F.3d 384, 386–87 (5th Cir. 2021); *Mwasaru v. Napolitano*, 619 F.3d 545 (6th Cir. 2010); *Mohamed v. Gonzales*, 436 F.3d 79, 81 (2d Cir. 2006); *Coraggioso v. Ashcroft*, 355 F.3d 730, 734 (3d Cir. 2004); *Nyaga v. Ashcroft*, 323 F.3d 906, 916 (11th Cir. 2003). In this suit, however, more than 180 aliens who believe that their lottery results were good enough to secure visas during Fiscal Year 2020—if they otherwise qualify—

contend that they are entitled to have their claims adjudicated today notwithstanding §1154(a)(1)(I)(ii)(II) and *Iddir*. But the district court dismissed the suit for lack of standing. 2021 U.S. Dist. LEXIS 222937 (N.D. Ill. Nov. 18, 2021).

Our plaintiffs ran into trouble because, in the middle of fiscal 2020, the World Health Organization declared that SARS-CoV-2 and its disease, COVID-19, had become a pandemic. On March 20, 2020, the State Department stopped processing all routine visa applications, a category that includes diversity visas. Higher-priority applications, such as for diplomats, medical emergencies, and medical personnel, continued to be approved. Two presidential orders (Proclamation 10014 of April 22 and Proclamation 10052 of June 22) confirmed the Department's approach. Fiscal Year 2020 expired at the end of September 2020 with plaintiffs' applications still in stasis. The aliens later filed this suit, joined by some U.S. citizens and by firms that would employ the aliens if they had permanent-residence status.

Plaintiffs seek to distinguish *Iddir* on the ground that it denied a petition for mandamus, while they want an injunction, a declaratory judgment, and damages. But the difference in requested relief does not overcome the reason *Iddir* came out as it did: the language of §1154(a)(1)(I)(ii)(II). If applicants "remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected", then it does not matter what kind of relief they want. Once the fiscal year ends, they are no longer eligible.

Nor can plaintiffs get mileage from decisions such as *Brock v. Pierce County*, 476 U.S. 253 (1986), and *Barnhart v. Peabody Coal Co.*, 537 U.S. 149 (2003). These decisions dealt with statutes requiring agencies to do things by specified dates—for

example, issue regulations within a year of a statute's enactment or, in *Peabody Coal*, to match coal companies with claims for health benefits. The Justices held in these and similar cases that agencies do not lose power to act just because they fail to meet a statutory deadline. Plaintiffs want us to treat §1154(a)(1)(I)(ii)(II) as a deadline for administrative action and to hold that the State Department still owes them a duty to adjudicate their visa applications. Their problem is that this statute, unlike the ones in *Peabody Coal* and *Pierce County*, does not set a time limit for administrative action. Indeed, it does not impose any duty on the State Department. Instead it specifies the consequence of delay: the applicant's eligibility for a visa expires. A court is not authorized to substitute a different consequence, such as belated agency action, for the one chosen by Congress. A statute such as §1154(a)(1)(I)(ii)(II) imposes the onus of delay on the aliens. Perhaps it would have been wiser for Congress to enact a deadline for administrative action—for why should people lose entitlements because of things outside their control?—but that's not the sort of statute on the books.

Still, plaintiffs insist, they can at least receive a declaratory judgment. They want a court to declare that the State Department acted unlawfully or in bad faith when it stopped processing most visa applications in March 2020. That would be an advisory opinion, since it would be disconnected from any of plaintiffs' legal entitlements.

As for money—plaintiffs want the State Department to reimburse their application fees plus expenses for medical exams and other documents used to support the applications—the problem is sovereign immunity. To obtain damages from the United States, a plaintiff needs a statute authorizing relief.

See, e.g., *Brownback v. King*, 141 S. Ct. 740, 749 (2021); *United States v. Navajo Nation*, 556 U.S. 287, 289–90 (2009). The Administrative Procedure Act does not serve that function, for its waiver of sovereign immunity is limited to "relief other than money damages". 5 U.S.C. §702. Plaintiffs want compensation for outlays they have made; that would be a form of money damages, as the Supreme Court understands §702. See *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999). When a statute directs the United States to pay money, enforcing that statute does not entail money damages. See *Bowen v. Massachusetts*, 487 U.S. 879 (1988). This brings us back to the point that plaintiffs have not identified any statute requiring the State Department to make them whole for outlays that do not lead to visas and so seem wasted in retrospect. Plaintiffs' request for nominal damages fails for the same reason.

We have said enough to show why the plaintiffs lose. But we need to say more about the district court's conclusion that they lack standing. That is not what *Iddir* held. Plaintiffs in *Iddir* sought a writ of mandamus to compel the State Department to adjudicate their applications, and we held that because of §1154(a)(1)(I)(ii)(II) the aliens lack a clear entitlement to that relief. Such an entitlement is essential to mandamus, and the opinion in *Iddir* wrapped up with the statement that the district court lacked "mandamus jurisdiction" under 28 U.S.C. §1361. 301 F.3d at 501. The court did not explain why failure on the merits implied lack of jurisdiction, and many times the Supreme Court has held that it does not. See, e.g., *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998); *Bell v. Hood*, 327 U.S. 678 (1946). A concurring judge reached a jurisdictional conclusion by a different route; he would have held that, because §1154(a)(1)(I)(ii)(II) blocks

relief, the plaintiffs' claim was moot. 301 F.3d at 501–02 (Flaum, J., concurring).

Neither opinion in *Iddir* finds an absence of standing. The district court instead relied on *Taylor v. McCament*, 875 F.3d 849 (7th Cir. 2017). *Taylor* dealt with a class of visas (the U visa) that is limited to 10,000 a year. Plaintiffs maintained that because in some years the State Department did not issue any U visas, and a long queue had developed (applications for U visas, unlike applications for diversity visas, roll over from one year to the next), a court should order it to issue 80,000 visas in a single year to clear the backlog. We held that this relief was forbidden by statute. Our opinion characterized this as a lack of standing, because the limit on the annual number of U visas meant that the plaintiffs' injury was not redressable. The opinion in *Taylor* implied that this is what both of the opinions in *Iddir* had been getting at, which is what led the district court to dismiss the current suit for lack of standing.

We shall not try to conceal our skepticism about the jurisdictional characterizations of the dispositions in both *Iddir* and *Taylor*. All three of these opinions (two in *Iddir* and one in *Taylor*) use the fact that statutes foreclose relief as a reason to find a lack of jurisdiction. Yet plaintiffs lose all the time without having their suits dismissed for lack of jurisdiction. The Supreme Court insists that jurisdictional dismissals be limited to statutes that speak in jurisdictional terms. See, e.g., *Boechler, P.C. v. CIR*, No. 20–1472 (U.S. Apr. 21, 2022) (collecting authority). Section 1361, the mandamus statute, does not concern jurisdiction at all; it authorizes a particular kind of remedy. Jurisdiction in *Iddir* rested on 28 U.S.C. §1331 (federal question) and §1346(a)(2) (United States as defendant).

Section 1154(a)(1)(I)(ii)(II) does not contain the word "juris-diction" or subtract from jurisdiction granted elsewhere.

And it is hard to see how *Iddir* could have been dismissed as moot. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (cleaned up). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ibid*. The plaintiffs in *Iddir* had a concrete stake in the outcome, and relief was possible. A court could have ordered the State Department to adjudicate the visa applications after the fiscal year ended. The problem was not impossibility but the fact that plaintiffs did not have a right to that relief. The same can be said about standing: a court could redress plaintiffs' injury by ordering the State Department to adjudicate their applications. The problem is not impossibility but the lack of an entitlement. In other words, the plaintiffs in *Iddir* and *Taylor* lost on the merits, just as the plaintiffs in this case have done.

Any doubt about whether a court *can* order relief of the sort that plaintiffs want is dispelled by the fact that a court *has done so*. The alien plaintiffs are members of the class in *Gomez v. Trump*, 490 F. Supp. 3d 276 (D. D.C. 2020), which ordered the State Department to "reserve" about 9,000 visas for people whose applications lapsed on September 30, 2020. These applications apparently would be adjudicated in 2022 or even later, despite the statutory language. The district court stayed its order to the extent that it requires belated adjudication, and the case is before the D.C. Circuit on the State Department's appeal. The Department does not appear to contend that *Gomez* is moot or that the class lacks standing; instead the

Department contends that plaintiffs lose on the merits, given §1154(a)(1)(I)(ii)(II). And that seems to us the right issue.

Still, both *Iddir* and *Taylor* announced jurisdictional holdings. The other courts of appeals cited in this opinion's third paragraph likewise have concluded that one or another jurisdictional obstacle prevents relief in favor of aliens who seek belated adjudication of diversity-visa applications. Overruling the jurisdictional holdings of *Iddir* and *Taylor* would not open the door to a decision in plaintiffs' favor, yet it would create a conflict among the circuits.

The difference between jurisdictional and substantive characterizations would matter if the State Department were to waive or forfeit the benefit of §1154(a)(1)(I)(ii)(II). Statutory defenses may be surrendered, while jurisdictional issues must be resolved even if the parties ignore the question or affirmatively declare that the court has jurisdiction. We leave to the future whether to revisit the jurisdictional footing of *Iddir* and *Taylor* should the benefit of §1154(a)(1)(I)(ii)(II) be waived or forfeited.

One last comment. Because the alien plaintiffs are members of the class certified in *Gomez*, they will receive the benefit of that decision should it be affirmed. Our opinion in *Iddir* suggested that it might be possible to disregard §1154(a)(1)(I)(ii)(II) if the court awards relief before the end of a fiscal year, even if the implementation of that relief would come later. 301 F.3d at 501 n.2. The district court in *Gomez* acted on September 30, 2020, the last day of FY 2020. The D.C. Circuit (and, if necessary, the Supreme Court) will have to decide whether the date of judicial action makes a difference. We do not tackle that question today, for this suit was not filed

until after the end of FY 2020. If plaintiffs are to obtain any relief, it must come in *Gomez*.

AFFIRMED