In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 07-1643

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TRAVIS FARRIS,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Central District of Illinois.
No. 06-CR-20029—**Michael P. McCuskey**, *Chief Judge.*

---

ARGUED APRIL 10, 2008—DECIDED JULY 9, 2008

---

Before FLAUM, KANNE, and EVANS, *Circuit Judges*.

FLAUM, *Circuit Judge*. Defendant Travis Farris was found guilty on three counts related to a bank robbery and filing a false insurance claim. Farris committed these acts with his long-time friend, Jesse Matthew Coartney, who as part of a plea agreement, testified against Farris at trial. On appeal, Farris challenges the sufficiency of the evidence against him and the reasonableness of the within-Guidelines sentence he received from the district court. For the following reasons, we affirm.

## I. Background

Farris's convictions stem from his criminal involvement with his grade school friend, Coartney. The two had met in the third grade in Mattoon, Illinois, and remained best friends after graduating from high school in 2000. They were a striking pair, with Coartney standing at 6 foot, 7 inches and weighing 495 pounds when the crimes occurred, and Farris checking in at 5 foot, 7 inches and 170 pounds.

According to Coartney's testimony at trial, in February 2004, he and Farris concocted a plan to obtain the insurance proceeds for Farris's Kia Sportage, which needed fixing. On February 17, Coartney drove to southern Illinois as part of his delivery job with Schwan's. While down there, Coartney called Farris, informing him that he had found a location where they could burn the Kia to get the insurance money. On February 20, Farris and his wife, who had been staying at Coartney's trailer, drove the Kia down to southern Illinois. That night, Coartney and Farris drove in separate vehicles to the rural location Coartney had scoped out. The two then broke the windows to the Kia, took out the battery, poured gas on the car, and set it on fire. They then went back to the hotel, picked up Farris's wife, and drove in Coartney's car back to his trailer.

The next morning, on February 21, Coartney and Farris launched their bank robbery plan. According to Coartney, this is something the two of them had discussed doing since high school, although their plans had turned more serious in early February. They obtained supplies in advance—Coartney purchased a police scanner at Wal-Mart, the two stole a mask from the same store, and Farris bought a nine millimeter gun at Oakley's Bicycle

Shop. They also first tried their hand at robbing a Ramada Inn where Coartney had previously worked, but were unsuccessful. The morning of February 21, they took the supplies listed above, as well as gloves, a jacket, and duct tape, and drove Farris's Mercury Cougar, with duct-tape covered license plates, to a U.S. Bank in Mattoon. It was a little before 10 AM at the time, and Farris reminded Coartney that they needed to hurry, since Farris had a meeting with an Army recruiter that morning.

At 9:43 AM, the surveillance video at the U.S. Bank in Mattoon captured two masked white males robbing the bank. As the bank teller testified and Coartney corroborated, the first robber (who, according to Coartney, was Farris) jumped the counter holding a gun, and ordered the teller to the ground while he proceeded to go through the drawers for money. The teller identified the first robber as being about five foot eight inches and of average build. As for the second robber, the teller did not get a good look at him, but identified him as being about the same height, but stockier. He was carrying a police scanner and asked the teller where the bank's video-tape was located. Meanwhile, a second teller had been in the bathroom when the robbery began, and when she came out, she was ordered to the ground at gunpoint by the first robber. The second teller also described the first robber as somewhere between five foot seven and five foot nine, and of average build. Although this second teller heard the second robber's scanner, she never got a look at him.

While this robbery was occurring, a customer pulled up to the bank's drive-up window. Looking in, she saw the two masked robbers and noted a large size difference between them. When the robbers pointed at her, the

customer drove off to the police station. As Coartney testified, he and Farris, upon seeing the customer, fled the bank, got into Farris's car, and drove about one mile back to Coartney's trailer. Once at the trailer, as the two had already planned, Coartney took all the "equipment" from the robbery, including the money they had stolen, and drove his car three or four miles to a garage owned by Farris's parents. Farris then drove his Cougar, without any incriminating evidence in it, to his parent's garage by a different route. Once there, the two divided up the cash they had stolen (approximately $3,600) and reimbursed each other for the costs of the gun and the scanner. Farris then called his brother James about being late for the Army recruiting event, and then the two split up.

At first, it appeared Farris and Coartney had gotten away with the crimes. On February 22, two days after burning the Kia, Farris reported the vehicle as stolen to the Mattoon police and filed a claim with his insurance company. Meanwhile, an officer in southern Illinois had found the Kia in flames the night of February 20. Farris's insurance company investigated Farris's claim and on March 8, 2004, issued Farris a check for $4,400. On July 23, 2004, however, federal and local law enforcement officers executed a search warrant at Coartney's trailer, in which they located the bank's surveillance videotape, a police scanner, and a ski mask. That evening Coartney was arrested, where he confessed to the robbery, identified Farris as the other robber, and told the officers of their involvement burning the Kia. Four days later, while Farris was on leave from the Army, authorities interviewed Farris, who denied any involvement in burning the Kia or robbing the bank.

A grand jury indicted Farris on three counts in April 6, 2006, with a superseding indictment including an addi-

tional count being issued on November 2, 2006. Count 1 alleged that Farris and Coartney conspired to commit armed robbery at the Ramada Inn and U.S. Bank and to commit mail fraud (burning the Kia and filing a false claim report) in violation of 18 U.S.C. §§ 2, 1341, 1951(a), and 2113(a). Count 2 charged Farris with committing the bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2, while Count 3 alleged a Hobbs Act violation under 18 U.S.C. § 1951(a) with respect to the robbery of the Ramada Inn, as well as a violation of 18 U.S.C. § 2. The final count against Farris was for using a firearm as part of the bank robbery, in violation of 18 U.S.C. § 924(c).

A jury trial followed in which Coartney's testimony against Farris was corroborated by many other Government witnesses. At the close of the Government's case, Farris's counsel filed a motion for acquittal under FED. R. CRIM. P. 29, which was denied. Defendant's evidence was then presented, during which Farris took the stand in his own defense. With respect to his Kia, Farris denied that he was in southern Illinois on February 20 or had any role in the vehicle being burned. Farris also presented an alibi for his involvement in the bank robbery, claiming that he attended an Army event at 10 AM the morning of the bank robbery, and that it would have been impossible for him to have also robbed the bank less than 20 minutes earlier. Farris's brother and cousin confirmed that they attended the event and arrived together with Farris. The Army Sergeant in charge of the recruiting function that day was also called as a witness by Farris. He testified that these recruiting events typically started "at about 10:00," and that this particular event started sometime between 10:00 and 10:20 at the latest.

At the end of the trial, the jury returned a guilty ver-
dict against Farris on all but Count 3. The case then pro-
ceeded to sentencing, with the Presentence Investigation
Report ("PSR") recommending a Guideline range sen-
tence of 63 to 78 months for Counts 1 and 2, and an addi-
tional mandatory consecutive sentence of at least 7 years
(84 months) for Count 4. There were no objections to
the PSR or Guidelines calculations, leaving the district
court to determine a reasonable sentence. Farris's sister-in-
law testified to him being a good family man, and Farris's
wife further testified to Farris's attentiveness to her
health problems and the hardship his incarceration
would have on the family. After discussing its reasoning,
the district court sentenced Farris to 63 months, the mini-
mum within-Guidelines sentence, plus an additional
84 months for the gun charge. This appeal followed.

## II.  Discussion

Farris raises two issues before this Court on appeal: the
sufficiency of the Government's evidence and the reason-
ableness of the district court's sentence. We address each
of these issues in turn.

### A.  Sufficiency of the Evidence

Farris first argues that the Government presented
insufficient evidence to convict him for participating in
the crimes related to the bank robbery or the burning of
the Kia. Farris faces a steep, uphill battle to prevail on
this claim given the high standard of review. As this Court
has stated, "[o]ur threshold inquiry is whether 'after
viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). Moreover, "[w]e will overturn a conviction based on insufficient evidence only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *Id.* The Government, however, argues that Farris faces an even higher burden in this case, contending that Farris waived his sufficiency of the evidence challenge by failing to renew his motion for judgment of acquittal under FED. R. CRIM. P. 29 at the close of all the evidence or within seven days of the jury's verdict. *United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir. 1996). Farris failed to respond to the Government's argument in a Reply Brief, and accordingly, we find that Farris waived his sufficiency of the evidence challenge, and instead, "may obtain a reversal only if he demonstrates 'a manifest miscarriage of justice.' " *Id*. (quoting *United States v. Archambault*, 62 F.3d 995, 998 (7th Cir. 1995)). This heightened standard of review, however, has no impact on the merits of Farris's claim, since under either standard, there was clearly sufficient evidence to support the verdict and no miscarriage of justice occurred.

Farris's sufficiency of the evidence arguments do not dwell on whether discreet elements for each crime were proved beyond a reasonable doubt. Rather, he broadly claims that there was insufficient evidence linking him to either the bank robbery or the burning of the Kia. These assertions on Farris's part, however, are directly undermined by Coartney's testimony, as both a participant and a witness, regarding Farris's role in both these crimes.

Although Farris argues that Coartney's arguments were "unreasonable," it is well settled that on a sufficiency of the evidence claim, this Court "do[es] not weigh the evidence or assess the credibility of witnesses." *United States v. Orozco-Vasquez*, 469 F.3d 1101, 1106 (7th Cir. 2006). Therefore, it is of no significance that, as Farris points out, "Coartney's testimony is whole[ly] inconsistent with the evidence presented by Travis [Farris] at trial." Appellant's Br. at 28.

Moreover, the specific arguments Farris makes with respect to his convictions all fail to show that the evidence was insufficient or "a manifest miscarriage of justice." With respect to the burning of the Kia and the accompanying conspiracy charge, Farris makes no effort to argue that there was insufficient evidence for the jury to find any of the elements for mail fraud or conspiracy satisfied. Instead, Farris's sole argument focuses on motive, claiming that no evidence was presented, save Coartney's testimony, to show that there had been mechanical problems with the vehicle or that Farris's financial situation was so dire that he would be compelled to defraud his insurance company. Even if the jury were to find in Farris's favor on these issues, however, this would not be inconsistent with the jury also finding that Farris burned the vehicle to obtain the insurance proceeds.

As for the bank robbery, given that we will not reevaluate credibility determinations as to witness testimony, Farris is left to argue that Coartney's testimony "was incredible as a matter of law, meaning it would have been 'physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all.'" *United States v.*

*Saulter*, 60 F.3d 270, 275 (7th Cir. 1995) (quoting *United States v. Wallace*, 32 F.3d 1171, 1173 (7th Cir. 1994)). Farris tries to make such an argument, claiming that if he had in fact participated in the bank robbery, it would have been impossible for him to have also arrived at the Army recruiting event later that morning when he did. Even based on Farris's own time estimates, however, his claim fails. The bank's surveillance video reflects that the robbers were in the bank at 9:44 AM. Despite Farris's conclusory assertion that it would have then taken him "well over 30 minutes" to arrive at the Army function, his formal time calculation is that travel time from the bank to the Army event would have been more than 28 minutes and 8 seconds. Using this latter figure, Farris would have arrived at the Army function sometime after 10:12 AM. This fails to make Coartney's testimony incredible as a matter of law, since the Army Sergeant, who was Farris's own witness, testified that the event that morning could have begun as late as 10:20 AM.

At trial, Farris was given the opportunity to present his own evidence and cross-examine and impeach Coartney's testimony. The fact that the jury ultimately credited Coartney's testimony is a matter that Farris improperly tries to re-litigate on appeal. The Government provided more than ample evidence for a jury to find Farris guilty of the charged crimes. While Coartney's testimony alone would have been sufficient to support the verdict, his testimony was also corroborated by eye-witness accounts of the robbery, the store owner who sold Farris the gun, and other witnesses. For these reasons, we affirm on this claim.

**B.  Sentencing**

Farris also appeals his sentence, arguing that although he received a within-Guidelines sentence, the district court unreasonably failed to properly weigh the mitigating evidence presented by Farris. This argument warrants little discussion. In reviewing sentences, this Court applies an abuse of discretion standard, and first looks at whether the lower court committed any procedural error, such as improperly calculating the Guidelines range or failing to consider the § 3553(a) factors. *Gall v. United States*, 128 S.Ct. 586, 597 (2007). Here, no argument was raised below or on appeal that such a procedural error occurred. Instead, Farris's argument is focused on the second part of this Court's inquiry— "the substantive reasonableness of the sentence." *Id.* This Court, however, applies a presumption of reasonableness to a within Guidelines sentence. *Rita v. United States*, 127 S.Ct. 2456, 2462 (2007). The district court in this case sentenced Farris to the low end of the Guidelines range, and while Farris contests the weight the district court gave to the mitigating evidence he presented, the sentencing judge was in a superior position to balance these sentencing considerations, *see Gall*, 128 S.Ct. at 597, and we will not second guess his determinations. Accordingly, we affirm the district court's sentence.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment and sentence.