In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1943

THOMAS TAYLOR,

*Plaintiff-Appellant,*

*v.*

JAMES W. MCCAMENT, Acting Director, U.S. Citizenship &
Immigration Services, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-10754 — **Amy J. St. Eve**, *Judge.*

ARGUED OCTOBER 26, 2017 — DECIDED NOVEMBER 17, 2017

Before FLAUM, RIPPLE, and MANION, *Circuit Judges.*

FLAUM, *Circuit Judge.* Appellant Thomas Taylor applied for
a U-visa in 2014. United States Citizenship and Immigration
Services ("USCIS") determined that Taylor was eligible, but
placed him on a waiting list because the relevant statute
prohibits the agency from issuing more than 10,000 U-visas
per year. Taylor filed suit in district court, alleging that

USCIS's prior delay in promulgating regulations for the U-visa program caused the backlog in applications. He asserted claims under the Administrative Procedure Act ("APA") and the Mandamus Act, and asked the court to compel USCIS to immediately issue 80,000 U-visas to those on the waiting list. The district court determined that Taylor lacked standing and accordingly dismissed his complaint for lack of subject matter jurisdiction. We affirm.

## I. Background

On October 28, 2000, Congress created a new nonimmigrant visa classification—the "U-visa"—for any alien who is the victim of a qualifying crime in the United States and who assists law enforcement in the investigation or prosecution of that crime. *See* Victims of Trafficking and Violence Protection Act of 2000 (Victims Protection Act), Pub. L. No. 106-386, 114 Stat. 1464 (codified at 8 U.S.C. § 1101(a)(15)(U)). The purpose of the U-visa program is to strengthen law enforcement efforts, while simultaneously offering protection to victims. *See* Victims Protection Act, Pub L. No. 106-386, § 1513(a)(2), 114 Stat. 1464. To that end, Congress gave the Attorney General "discretion to convert the status of such nonimmigrants to that of permanent residents when doing so is justified on humanitarian grounds, for family unity, or is otherwise in the public interest." *Id.* § 1513(a)(2)(C). An individual can apply for lawful permanent resident status once they have possessed a U-visa for three years. *See* 8 U.S.C. § 1255(m); *see also* 8 C.F.R. § 245.24(a)(1).

Although the Victims Protection Act was enacted in 2000, the relevant agencies[1] failed to subsequently create any regulations or procedures to enable individuals to apply for U-visas. In 2005, Congress included a provision in the Violence Against Women Act ("VAWA") directing the Secretary of Homeland Security to issue regulations for the Victims Protection Act "[n]ot later than 180 days after the enactment of this Act." Pub. L. 109-162, § 828, 119 Stat. 2960 (2006). Because VAWA was signed into law on January 5, 2006, USCIS had a deadline of July 4, 2006 to issue the regulations for U-visas.

In September 2007—nearly seven years after enactment of the Victims Protection Act and more than a year after the Congressionally mandated regulation deadline—USCIS issued interim regulations with procedures for victims seeking U-visas. *See* New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014-01 (Sept. 17, 2007). By the end of fiscal year 2008, the agency had received 12,151 petitions, but it placed the vast majority (12,092) on hold pending the issuance of final regulations. *See* U.S. DEP'T OF HOMELAND SEC., OFFICE OF THE CITIZENSHIP AND IMMIGRATION SERVS. OMBUDSMAN, IMPROVING THE PROCESS FOR VICTIMS OF HUMAN TRAFFICKING AND CERTAIN CRIMINAL ACTIVITY: THE T AND U VISA 7 (2009),

---

[1] Prior to March 1, 2003, the Immigration and Naturalization Service ("INS") was responsible for adjudicating visa petitions. However, in 2002 Congress dismantled the INS and created a new agency: the Department of Homeland Security ("DHS"). *See* Homeland Security Act of 2002, Pub. L. No. 107–296, 116 Stat. 2135. Congress established USCIS as a department within DHS, and transferred all responsibility for visa petitions from the INS to USCIS. *See id.* § 451(b).

https://www.dhs.gov/xlibrary/assets/cisomb_tandu_visa_rec
ommendation_2009-01-26.pdf.

The agency promulgated final regulations in December
2008, and those regulations went into effect in January 2009.
*See* Adjustment of Status to Lawful Permanent Resident for
Aliens in T or U Nonimmigrant Status, 73 Fed. Reg. 75,540-01
(Dec. 12, 2008). Only then did USCIS begin to issue U-visas in
large numbers. *See* U.S. DEP'T OF HOMELAND SEC., USCIS,
NUMBER OF FORM I-918, PETITION FOR U NONIMMIGRANT
STATUS, BY FISCAL YEAR, QUARTER, AND CASE STATUS (2009-
2017), https://www.uscis.gov/sites/default/files/USCIS/Resou
rces/Reports%20and%20Studies/Immigration%20Forms%20
Data/Victims/I918u_visastatistics_fy2017_qtr3.pdf
[hereinafter U-visa Statistics].

Even after USCIS finally began to issue U-visas, however,
it was not able to provide a U-visa to all eligible applicants
because the Victims Protection Act limits the number of U-
visas that may be issued each fiscal year to 10,000. *See* 8 U.S.C.
§ 1184(p)(2) ("The number of aliens who may be issued visas
or otherwise provided status as nonimmigrants … in any
fiscal year shall not exceed 10,000."). Once the fiscal year limit
is reached, eligible U-visa applicants are placed on a waiting
list. 8 C.F.R. § 214.14(d)(2). USCIS reviews the petitions on the
waiting list based on the date they were filed, with the oldest
petitions receiving the highest priority. *Id.* While on the
waiting list, USCIS grants the petitioner and qualifying family
members deferred action, a discretionary form of relief that
defers removal and confers employment authorization
benefits. *Id.* The number of U-visa petitions has steadily
increased since 2009, and USCIS has reached the statutory cap
each year since fiscal year 2010. *See* U-visa Statistics, *supra.*

Taylor, a citizen of Ireland, entered the United States in 2000 on a visitor's visa. In October 2008, Taylor was the victim of perjury, a qualifying crime under the Victims Protection Act. After the Federal Bureau of Investigation certified that Taylor had provided the necessary assistance, Taylor applied for a U-visa on June 9, 2014. Although USCIS determined that Taylor was eligible, the agency placed him on the waiting list due to the annual cap. On September 7, 2016, USCIS granted Taylor deferred action. Taylor is still on the waiting list.[2]

On November 21, 2016, Taylor filed a petition for declaratory judgment in the Northern District of Illinois against the Director of USCIS and the Secretary of DHS. Taylor alleged that defendants unreasonably delayed implementing regulations for the U-visa program, thus depriving him of U-visa status and delaying his eligibility for lawful permanent resident status. According to Taylor, because the agencies were authorized to issue 10,000 U-visas per year between 2000 and 2008 but failed to do so, they wrongfully withheld a total of 80,000 U-visas. Thus, Taylor asked the court to compel USCIS to immediately issue 80,000 U-visas to those who are currently on the waiting list pursuant to its authority under the Mandamus Act and the APA.

The district court dismissed Taylor's petition on two independent grounds. First, the court held that it lacked subject matter jurisdiction because Taylor did not have standing. Second, the court held that, even if Taylor had

---

[2] At oral argument Taylor's counsel estimated that Taylor has approximately 30,000–35,000 applicants ahead of him on the waiting list.

standing, he had failed to state a claim under either the Mandamus Act or the APA. This appeal followed.

## II. Discussion

We review a district court's dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) de novo. *See Silha v. ACT, Inc.*, 807 F.3d 169, 172 (7th Cir. 2015). Where, as here, plaintiff's complaint is facially sufficient but external facts call the court's jurisdiction into question, we "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quoting *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008)).

Article III limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To have the requisite constitutional standing to bring suit in federal court, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* If the plaintiff lacks standing, the federal court lacks subject matter jurisdiction and the suit must be dismissed under Rule 12(b)(1).

Defendants-Appellees argue that Taylor cannot satisfy any of the three standing requirements. We only discuss

redressability because it is dispositive of the standing analysis.

In identical circumstances, the Northern District of Illinois has held that a favorable judicial decision would not redress plaintiffs' injuries. *See Patel v. Rodriguez*, No. 15-cv-486, 2015 WL 6083199 (N.D. Ill. Oct. 13, 2015). Like Taylor, the plaintiffs in *Patel* challenged the agency's delay in implementing regulations for the Victims Protection Act and sought to compel USCIS to issue 80,000 U-visas immediately. *Id.* at *1. The court reasoned that, even if it ordered USCIS to issue 80,000 U-visas, the agency would not be able to do so because of the annual statutory cap. *Id.* at *5. Looking to the statutory language, the court explained that "[t]he term 'shall' … denotes a clear congressional directive," and therefore "USCIS lacks the authority to exceed [the fiscal year limit]." *Id.* (citing *Iddir v. INS*, 301 F.3d 492–501 (7th Cir. 2002)). This, combined with the fact that the statutory cap had already been reached for the year in question, meant that "there [were] simply no U-visas to issue, much less 80,000." *Id.* at *5. Because the court was "unable to provide relief," it concluded that plaintiffs lacked standing. *Id.* We find this reasoning persuasive.

Our decision in *Iddir v. INS* is also instructive. The appellants in *Iddir* sought a writ of mandamus to compel the INS to adjudicate their visa petitions under the Diversity Visa Lottery Program. 301 F.3d at 493–94. The relevant statute provided that, once an individual was randomly chosen for the Diversity Visa Lottery Program, their petition had to be completed and adjudicated before the end of the fiscal year to obtain a visa. *Id.* Although the appellants completed their petitions on time, INS failed to adjudicate their petitions

within the one-year statutory window. *Id.* at 494–95. INS argued that it "[could not] issue the visas regardless of the outcome of any adjudication" because "the visas expired at the end of the fiscal year." *Id.* at 500.

The panel held that mandamus relief was not appropriate because the INS did not have a clear duty to adjudicate the petitions. *See id.* at 500–01. Although we did not directly address standing, we acknowledged that "the issues of duty and potential relief are entangled in this unique statutory situation." *Id.* at 500. And we explained that "the relief the appellants currently seek is illusory, because even if the INS adjudicated the applications today, visas could not be issued." *Id.* This was so because "the statute unequivocally states that the applicants only remain eligible 'through the end of the specific fiscal year for which they were selected.'" *Id.* at 501 (quoting 8 U.S.C. § 1154(a)(1)(I)(ii)). Based on this deadline, we concluded that "the INS lacks the statutory authority to award the relief sought by the plaintiffs." *Id.*

I agreed with the majority's result, but wrote separately because I thought the plaintiffs' claims should be dismissed on mootness grounds. *Id.* at 501–02 (opinion of Flaum, J.). I explained that "it is the INS's lack of *power* to grant effectual relief—not its lack of *duty*—that makes the claims nonjusticiable." *Id.* at 502. And I concluded that, "because the INS lacks the capability to issue visas to DV lottery winners after the fiscal year for which they were selected to apply ends, no viable remedy is available to plaintiffs and, therefore, their claims are moot." *Id.* The district court below similarly dismissed the plaintiffs' claims on mootness grounds. *See Iddir v. INS*, 166 F. Supp. 2d 1250, 1258–60 (N.D. Ill. 2001) (concluding that "[a]ny order by this court compelling the

INS to adjudicate plaintiffs' applications would be a futile act" because "the INS cannot issue visa numbers that do not exist to plaintiffs").

Although my *Iddir* opinion focused on mootness, its reasoning is equally applicable in the standing context. After all, those two concepts are interrelated: "Mootness is 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The reasoning in *Iddir* suggests that a plaintiff loses standing—i.e., their claim becomes moot—if the relevant agency loses statutory authority to award the relief sought. 301 F.3d at 500–02. It follows that a plaintiff similarly lacks standing where the agency never had statutory authority to give the plaintiff the relief he seeks.

Here, as in *Patel* and *Iddir*, the agency lacks the statutory authority to give plaintiff the relief sought. The statute clearly provides that "[t]he number of aliens who may be issued visas or otherwise provided [U-visas] … in any fiscal year *shall* not exceed 10,000." 8 U.S.C. § 1184(p)(2)(A) (emphasis added). Taylor admits that the U-visa limit was reached in fiscal year 2016, and the U-visa limit has been reached for fiscal year 2017 as well. *See* USCIS, *USCIS Grants All Available U Visas for Fiscal Year 2017* (Aug. 30, 2017), https://www.uscis.gov/news/alerts /uscis-grants-all-available-u-visas-fiscal-year-2017.  Thus, even if a court ordered USCIS to immediately issue 80,000 U-visas, the agency would lack the statutory authority to do so.

At oral argument, Taylor claimed that *Iddir* is distinguishable because, unlike the expired visas at issue in *Iddir*, his petition is still viable. This fact, however, does not alter our conclusion. Although USCIS retains statutory authority to adjudicate Taylor's petition in the *future*, that is not the relief Taylor seeks here. Rather, he asks us to compel USCIS to *immediately* issue 80,000 U-visas to those on the waiting list.[3] Accordingly, our redressability analysis hinges on whether a court can effectively give him that relief. Based upon our reasoning in *Iddir*, the answer to that question is no. *See* 301 F.3d at 500–01 (describing the relief sought as "illusory" where the relevant agency lacks the statutory authority to award that relief).

In a final effort to avoid dismissal, Taylor argues that this Court has authority to redress his injury under the APA. However, this argument conflates the constitutional standing requirement with the merits of Taylor's claim. Although the APA gives a reviewing court authority to compel non-discretionary agency action that is unreasonably delayed, 5 U.S.C. §§ 706(1), 701(a)(1), it has no bearing on the threshold question of whether Taylor has standing to bring a claim

---

[3] To be clear, even if Taylor simply sought to compel USCIS to immediately adjudicate only *his* petition, the agency would still lack authority to provide that relief. USCIS regulations state that "[p]riority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority." 8 C.F.R. § 214.14(d)(2). Defendants argue that this regulation is entitled to judicial deference and, by failing to respond to this argument in his reply brief, Taylor waived any argument to the contrary. *See United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008). Thus, USCIS lacks authority to leap-frog Taylor over other waitlisted applicants.

under the APA in the first instance. If Taylor lacks constitutional standing, this Court cannot review his claims at all, let alone determine whether there was an unreasonable delay or a non-discretionary duty. In other words, even if a reviewing court had authority under the APA to compel USCIS to issue 80,000 U-visas, Taylor has not explained how USCIS could comply with such a court order in light of the statutory cap. Thus, he has not shown that a favorable judicial decision would give him the relief he seeks.

In sum, Taylor lacks standing.[4] We recognize that the agency's delay has adversely impacted Taylor and those who are similarly situated, but only Congress can provide the relief they seek.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4] Because we conclude that dismissal was appropriate on this ground, we need not address whether Taylor has stated a claim under the APA or the Mandamus Act.