In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 20-1672 & 20-1724

INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 139, AFL-CIO, *et al.*,

*Plaintiffs-Appellants, Cross-Appellees*,

*v.*

JAMES J. DALEY,

*Defendant-Appellee*,

*and*

WISCONSIN LEGISLATURE,

*Cross-Appellant, Proposed Intervenor*.

---

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 19-cv-01233 — **J. P. Stadtmueller**, *Judge*.

---

ARGUED NOVEMBER 13, 2020 — DECIDED DECEMBER 17, 2020

---

Before FLAUM, ROVNER, and BRENNAN, *Circuit Judges*.

FLAUM, *Circuit Judge*. This First Amendment case represents the third constitutional challenge to Wisconsin's Act 10 to reach this Court. We previously addressed Act 10 in

*Wisconsin Education Association Council v. Walker* (*WEAC*), 705 F.3d 640 (7th Cir. 2013), and *Laborers Local 236 v. Walker* (*Laborers*), 749 F.3d 628 (7th Cir. 2014). Act 10 significantly altered Wisconsin's public-employee labor laws. The Act separated public employees into two classes—a select group of "public safety employees" with the remainder classified as "general employees." It then made it more challenging for general-employee unions to retain certification as exclusive bargaining agents, prohibited public-sector employers from collectively bargaining with their general employees over anything except base wages, and prohibited public employers from deducting union dues from general employees' paychecks.

Plaintiffs-appellants, a public-employee labor union and two of its individual members, challenged these three provisions—the annual recertification requirement, the limitations on collective bargaining, and the prohibition on payroll deduction of union dues—arguing that the provisions infringe on their First Amendment rights. The chairman of the Wisconsin Employment Relations Commission (WERC) moved to dismiss. Shortly thereafter, the Wisconsin Legislature moved to intervene. In two separate orders, the district court dismissed plaintiffs-appellants' complaint in part for lack of standing and in part for failure to state a claim. The district court also denied the Legislature's motion to intervene. Plaintiffs-appellants appeal the dismissal of their complaint. The Legislature cross-appeals the denial of its motion to intervene. We now affirm.

## I.   Background

### A.  Act 10's Statutory and Legal History

Wisconsin grants public-sector employees the right to bargain collectively through two principal laws: the State Employment Labor Relations Act (SELRA) and the Municipal Employment Relations Act (MERA). These statutes define the rights of public employees and their unions as well as their relationship with state and municipal employers. Prior to 2011, public-sector unions enjoyed broad protections and privileges under SELRA and MERA. Governmental employers were obligated to bargain in good faith with employee representatives over a wide range of subjects, including wages and conditions of employment. Public-sector unions could petition WERC for an election to certify the union as the employees' exclusive bargaining agent. This certification required only a simple majority of those voting, and the union remained the employees' exclusive agent until 30% of the employee union members petitioned for a decertification election. Unions could also utilize the state and municipal payroll systems to automatically collect membership dues.

In 2011, however, the Wisconsin Legislature amended SELRA and MERA with the passage of Act 10. *See* 2011 Wis. Act 10, 2011 Wis. Sess. Laws 23. Act 10 divided Wisconsin state and municipal employees into two classes: "[p]ublic safety employee[s]," which includes police officers, firefighters, and deputy sheriffs, and "general municipal employee[s]," i.e., everyone else. *See* Wis. Stat. § 111.70(1)(fm), (mm). A subsequent amendment created a third class of "[t]ransit employee[s]." *See id.* § 111.70(1)(fm). Public safety and transit employees and their unions continue to operate under the pre-Act 10 scheme.

On the other hand, Act 10 subjected general employees to the various restrictions on union activity. First, Act 10 limited the scope of state and municipal employers' collective-bargaining obligations with respect to these employees. The Act still requires public employers to collectively bargain with general employees over base-wage increases, but it prohibits public employers from bargaining over anything else, including but not limited to other forms of compensation—such as overtime or premium pay—as well as nonwage issues. *See id.* §§ 111.70(1)(a), 111.70(4)(mb), 111.81(1), 111.91(3). Act 10 further mandates that general-employee unions submit to an annual recertification election to retain their status as the employees' exclusive agent, instead of allowing unions to remain certified indefinitely. *Id.* § 111.70(4)(d)3.b. Certification now requires affirmative votes from an absolute majority—"at least 51 percent"—of all employees in the bargaining unit, not just those voting. *Id.* §§ 111.70(4)(d)3.b., 111.83(3)(b). Finally, Act 10 bars public employers from deducting union dues from the earnings of general employees. *Id.* § 111.70(3g).[1]

We have already rejected two challenges to Act 10's constitutionality. The first came in *WEAC*, where we held that Act 10's prohibition on payroll deductions did not violate the First Amendment. 705 F.3d at 645. We concluded that the unions' previous use of the payroll system was equivalent to the state subsidizing the unions' speech. *Id.* at 646–48.

---

[1] Act 10 also precludes unions from imposing "fair-share" agreements on general employees, which require nonunion employees to pay a portion of the costs associated with the collective-bargaining process. Wis. Stat. §§ 111.70(2), 111.85. Plaintiffs-appellants do not challenge the constitutionality of these provisions in their complaint.

Wisconsin could thus withdraw this subsidy from certain groups so long as it did so on a viewpoint-neutral basis, and Act 10's distinction between public safety and general employees was, in fact, viewpoint neutral. *Id.* at 648–49. We also upheld Act 10's collective-bargaining limitation, recertification requirement, and payroll-deduction prohibition in the face of the *WEAC* plaintiffs' Fourteenth Amendment equal protection challenge, concluding that these provisions survived rational basis review. *Id.* at 654–57.

We considered a second challenge to Act 10 in *Laborers*. The plaintiffs there argued that Act 10's collective-bargaining limitation violated their First Amendment right to petition and that its various restrictions, in their cumulative effect, violated their First Amendment association rights. 749 F.3d at 634. They also challenged the collective-bargaining limitation under the Equal Protection Clause, arguing that it impermissibly disadvantaged represented employees compared to nonunion employees. *Id.* at 639. We held that the challenged provisions did not infringe the plaintiffs' First or Fourteenth Amendment rights. *See id.* at 638–41.

In addition, the Wisconsin Supreme Court upheld Act 10 in *Madison Teachers, Inc. v. Walker*, 2014 WI 99, 358 Wis. 2d 1, 851 N.W.2d 337. The plaintiffs in that case alleged that the collective-bargaining limitation, payroll-deduction prohibition, prohibition of fair-share agreements, and annual recertification requirement violated their First Amendment associational and Fourteenth Amendment equal protection rights. *Id.* ¶ 2. The state supreme court rejected each challenge, holding that "[n]o matter the limitations or 'burdens' a legislative enactment places on the collective bargaining process, collective bargaining remains a creation

of legislative grace and not constitutional obligation." *See id.* ¶ 160–61.

## B. Factual and Procedural Background

Plaintiffs-appellants here, Local 139, a general-employee union, and Karen Erickson and Heath Hanrahan, two of its individual members, challenge the three provisions of Act 10 described above: the (1) stricter recertification requirement, (2) limitation on permissible collective-bargaining subjects, and (3) prohibition on payroll deductions of union dues. They filed a three-count complaint against defendant-appellee James Daley, chairman of WERC, in federal district court, alleging that these provisions violate their rights under the First and Fourteenth Amendments and seeking declaratory and injunctive relief. The district court deemed plaintiffs-appellants' Fourteenth Amendment claims waived below, and plaintiffs-appellants do not raise them here. Therefore, our analysis proceeds along only First Amendment lines. *See United States v. Bryant*, 750 F.3d 642, 651 (7th Cir. 2014) ("Failure to develop an argument on appeal results in waiver even if the argument was presented to the district court.").

In Count 1, plaintiffs-appellants claimed that the annual recertification requirement violates their First Amendment rights by compelling them to vote "no," contrary to their wish not to vote at all. Specifically, they alleged that the recertification provision "declares that a non-vote is a vote against Union representation" and "[b]y equating not voting with voting no, Act 10 directly infringes on the rights of public employees to not engage in speech." Plaintiffs-appellants asserted that they had been "directly harmed by this provision of Act 10" in an April 2019 election when Local 139 "received 100% of all ballots cast," but because a majority of employees did not

vote, and Act 10 counted their nonvotes as no votes, Local 139 "was not recertified as the bargaining unit representative."

In Count 2, plaintiffs-appellants alleged that Daley had unlawfully interpreted Act 10's collective-bargaining limitation to preclude unions and municipal employers from entering into any agreements regarding nonwage issues, even outside of collective bargaining. Plaintiffs-appellants asserted that this interpretation of Act 10 "imposes an arbitrary restriction" upon their ability to negotiate or contract with municipal employers on matters of public concern, in violation of the First Amendment.

Finally, in Count 3, plaintiffs-appellants alleged that the payroll-deduction prohibition "constitutes a content based restriction on public employees' First Amendment rights." They acknowledged that we have "upheld the payroll dues deduction prohibition pursuant to Act 10," but they asked the district court to revisit those prior determinations in light of the Supreme Court's decision in *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018).

Daley moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendant-appellee the Wisconsin Legislature then moved to intervene as a defendant and simultaneously filed a proposed motion to dismiss.[2] The district court dismissed Counts 2 and 3 of the complaint in an order issued March 3, 2020, and subsequently dismissed Count 1 in a separate order issued April 7, 2020.

---

[2] Kristi Koschkee, a public-school teacher, also moved to intervene below. She did not file a notice of appeal from the denial of her motion to intervene, however, and is not a party on appeal.

Regarding Count 1, which challenged Act 10's recertification requirement, the district court held that only the individual plaintiffs could have Article III standing because the recertification provision regulates voting for a union, and "a person's right to vote is individual and personal in nature." The court held that it was "not clear" whether the individual plaintiffs had alleged facts sufficient for standing. The district court therefore ordered plaintiffs-appellants to file a supplemental brief addressing the issue of standing as to Count 1.

In their supplemental response, plaintiffs-appellants requested leave to file an amended complaint adding allegations to establish the individual plaintiffs' standing. For Erickson, the plaintiffs-appellants explained that an amended complaint would allege that she "abstained from voting in the 2019 recertification election," she "did want and does want Local 139 to serve as her exclusive bargaining representative," and "her abstention from voting was not intended to express an intent that she was voting against representation by Local 139. At most, her intent in abstaining from voting was to accept the will of those who chose to vote." Therefore, by converting her nonvote into a "no" vote, she "was injured by … the State compel[ling] her to speak against representation by Local 139" in a manner contrary to her wishes. Regarding Hanrahan, plaintiffs-appellants stated that an amended complaint would allege that he did vote in favor of Local 139 continuing to represent him as his exclusive bargaining representative, and his vote was "unconstitutionally diluted" when "the compelled speech of the non-voters le[d] to results which actually reversed the will of those who did vote."

The district court then dismissed Count 1, concluding that the individual plaintiffs lacked standing. The court explained

that even if the individual plaintiffs could allege an injury in fact, they were "unable to adequately allege causation" because that injury "would be fairly traceable to their fellow union members," and those members' decisions not to vote, not Daley. The district court further reasoned that "the Supreme Court [has] envisaged that a legislature could pass a law requiring a majority of voters to weigh in" for a ballot proposition to succeed. The district court therefore denied plaintiffs-appellants leave to amend on futility grounds.

Regarding Count 2, the district court also held that plaintiffs-appellants lacked standing to challenge Act 10's collective-bargaining limitation. Citing to our decision in *Laborers*, the district court stated that the collective-bargaining limitation "does not violate Plaintiffs' First Amendment rights because it does not prevent the union or its members from speaking." The court further concluded that to the extent plaintiffs-appellants alleged that Daley's application of the collective-bargaining limitation was unconstitutional because it "prohibit[ed] municipal employers from listening to what the unions have to say, then the injury would run to the municipal employers," not to plaintiffs-appellants.

Finally, the district court dismissed Count 3's challenge to Act 10's payroll-deduction prohibition on the merits. The court noted that we had "already upheld payroll deduction prohibitions" against a First Amendment challenge in *WEAC* under the framework set forth in *Ysursa v. Pocatello Education Association*, 555 U.S. 353, 358–59 (2009). Specifically, the district court recognized *WEAC*'s holding that the payroll-deduction prohibition constituted a viewpoint-neutral withdrawal of a state subsidy of unions' speech and imposed a viewpoint-neutral distinction between public safety and

general employees. *See WEAC*, 705 F.3d at 649, 652–53. The district court also rejected plaintiffs-appellants' reliance upon the Supreme Court's decisions in *Janus* and *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), to argue that the payroll-deduction prohibition violated individual union members' First Amendment rights, stating that *WEAC* and *Ysursa* remain good law.

The district court's orders together resulted in the dismissal of the case. Accordingly, the court also denied as moot the Legislature's pending motion to intervene. Plaintiffs-appellants appealed the dismissal of their claims. The Legislature cross-appealed the denial of its motion to intervene. We consolidated the appeals for consideration.

## II.   Discussion

On appeal, plaintiffs-appellants argue that the district court erred by dismissing Counts 1 and 2 for lack of standing and Count 3 for failure to state a claim. "If the plaintiff lacks standing, the federal court lacks subject matter jurisdiction and the suit must be dismissed under [Federal Rule of Civil Procedure] 12(b)(1)." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). We review a dismissal both for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) de novo. *See id.*; *Degroot v. Client Servs., Inc.*, 977 F.3d 656, 659 (7th Cir. 2020). "Generally, denials of leave to amend are reviewed for abuse of discretion." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015). But review of "futility-based denials includes *de novo* review of the legal basis for the futility." *Id.*

### A. Standing as to Counts 1 and 2

Our analysis begins with the district court's conclusions that plaintiffs-appellants lack standing as to Counts 1 and 2. "To reach the merits of a case, an Article III court must have jurisdiction." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019). "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). To establish standing, "the plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Foremost among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized,' *i.e.*, which 'affect[s] the plaintiff in a personal and individual way.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (alteration in original) (quoting *Lujan*, 504 U.S. at 560 & n.1). The allegations in a complaint must establish that the plaintiff has "a personal stake in the outcome of the controversy," *id.* at 1929 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)), rather than a "generalized grievance about the conduct of government," *id.* at 1931 (quoting *Lance v. Coffman*, 549 U.S. 437, 442 (2007)). "In determining at the pleadings stage whether the plaintiff's showing of standing passes muster, we accept as true the pleaded factual matter and draw all reasonable inferences in favor of the plaintiff." *Democratic Party of Wis. v. Vos*, 966 F.3d 581, 585 (7th Cir. 2020).

##### *1.  Count 1: The Recertification Requirement*

We turn first to plaintiffs-appellants' challenge to the annual recertification election requirement in Count 1. As a preliminary issue, Daley contends that our consideration on appeal of plaintiffs-appellants' standing is limited to the allegations contained in the filed complaint, rather than the additional allegations plaintiffs-appellants submitted to the district court in their supplemental brief. We disagree. While the district court's local rules required plaintiffs-appellants to formally move to amend their complaint, *see* E.D. Wis. Civ. R. 15, the district court acted within its discretion to consider the allegations in the supplemental brief, *see Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014) ("We have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules … ." (citation and internal quotation marks omitted)). Furthermore, federal courts "have an independent obligation to confirm our jurisdiction before adjudicating a case." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020). Having determined it required more information to fulfill this obligation, the district court requested supplemental briefing regarding standing. The court then based its decision to dismiss Count 1 and deny leave to amend on futility grounds, at least in part, on the allegations in plaintiffs-appellants' supplemental brief. Therefore, we may appropriately consider these additional allegations on appeal.

Count 1 focuses on whether Act 10 impermissibly compels speech from public employees who wish to remain silent. Specifically, it alleges that Act 10's recertification requirement infringes on plaintiffs-appellants' First Amendment right not to engage in speech because it effectively provides that

nonvotes in the recertification election will be counted as votes against union representation, rather than not being counted at all. In its initial dismissal order requesting supplemental briefing as to Count 1, the district court explained that only the individual plaintiffs, and not Local 139, could have standing to sue because the right to vote is "individual and personal in nature." *See Gill*, 138 S. Ct. at 1929. Plaintiffs-appellants then explained in their supplemental brief that they could amend their complaint to allege that Act 10's recertification provision unconstitutionally compelled Erickson—who supported Local 139's recertification and whose intent in abstaining from voting "was to accept the will of those who chose to vote"— to engage in speech she did not support by converting her nonvote into a "no" vote. They also stated that an amended complaint would allege that the recertification provision diluted Hanrahan's vote in favor of Local 139 by compelling speech from those who abstained from voting, thus reversing the results of the election. They also asserted that these alleged injuries gave Local 139 associational standing to sue on the individual plaintiffs' behalf. Plaintiffs-appellants argue that these allegations satisfy Article III's standing requirements. We disagree.

Regardless of whether plaintiffs-appellants have sufficiently alleged a constitutional injury in fact as to Erickson and Hanrahan, they have not pleaded "a causal connection between the injury and the challenged action." *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 643 (7th Cir. 2015) (citing *Lujan*, 504 U.S. at 560–61). Plaintiffs-appellants contend that the individual plaintiffs' injuries—compelled speech and vote dilution—are traceable to Act 10's treatment of nonvotes. The chain of causation between those purported

injuries and Act 10 depends, however, on "the independent action of some third part[ies] not before the court," *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)), specifically, the decisions of union members who favored recertification not to vote in the recertification election. As the Wisconsin Supreme Court has explained, "Act 10's certification election provisions merely specify the statutory requirements a certified representative must satisfy in order to exclusively negotiate on behalf of the general employees in its bargaining unit." *Madison Teachers*, 2014 WI 99, ¶ 65. Nothing in Act 10 impedes members' ability to vote or requires or directs them how to vote.

Stated differently, the individual plaintiffs' injuries depend on fewer than 51% of members choosing to participate in the election. That fact alone undermines plaintiffs-appellants' ability to satisfy the requirement that any injury in fact be fairly traceable to Act 10's recertification provision. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (expressing "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors"). Moreover, as the district court observed, if Erickson and the other nonvoting members freely decided to abstain despite having presumed knowledge of Act 10's absolute-majority requirement, then plaintiffs-appellants' injuries "would be fairly traceable to their fellow union members," not Act 10 or Daley. *See Cheek v. United States*, 498 U.S. 192, 199 (1991) (explaining that the common law presumes that "every person kn[ows] the law.").

In sum, plaintiffs-appellants' allegations regarding Count 1 in their complaint and supplemental briefing do not establish that the claimed injuries to Erickson or Hanrahan are

fairly traceable to Act 10's recertification provision. The individual plaintiffs-appellants thus do not have standing. Furthermore, we agree with the district court's conclusion that amendment as to Count 1 would be futile. Although Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires," courts may deny a proposed amended pleading if the amendment would be futile. Here, the fact that plaintiffs-appellants have not alleged standing to sue, despite receiving instruction from the district court and an opportunity to file supplemental briefing, indicates the futility of granting further leave to amend.

We also conclude that Local 139 lacks standing as to Count 1. The only theory of standing plaintiffs-appellants assert for Local 139 is associational standing on behalf of its members. Associational standing requires an organization's "members … [to] have standing to sue in their own right." *Vos*, 966 F.3d at 586. Because we determine that no member of Local 139 has standing to challenge this provision, Local 139 does not have standing to sue on their behalf. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

### 2. *Count 2: The Collective-Bargaining Limitation*

Regarding Count 2, plaintiffs-appellants allege that Daley's interpretation of Act 10's collective-bargaining limitation wrongfully prohibits all agreements between unions and municipal employers regarding nonwage issues, even if not collectively bargained. They assert that this wrongful interpretation injured Local 139 by precluding it from "entering into agreements that are fully consistent with Act 10." Relying on our decision in *Laborers*, the district court held that plaintiffs-appellants lacked standing because Act 10 did not infringe their First Amendment rights. On appeal,

plaintiffs-appellants acknowledge *Laborers* but contend that the district court erred in dismissing Count 2 for lack of standing because Daley's interpretation goes beyond the statutory text to "prevent[] the giving and receiving of speech (i.e., a back and forth conversation), which is not prohibited by Wis. Stat. [§] 111.70(a)(1) or Act 10 generally."

In *Laborers*, the plaintiff unions argued that Act 10's collective-bargaining limitation[3] violated their First Amendment petition clause rights because it "bars Wisconsin public employers from voluntarily entering into binding negotiations with a group of employees," even if they want to bargain outside of MERA's statutory framework, 749 F.3d at 633, 636, essentially the same argument that plaintiffs-appellants make here. We rejected that claim, concluding that Act 10's collective-bargaining limitation "does not proscribe any conduct by the unions themselves." *Id.* at 634. It "does not prohibit the unions from forming," "meeting," or "advocating on behalf of their members in any way they see fit." *Id.* Furthermore, "[n]othing in … Act 10 generally[] precludes the unions or their members from expressing their views to their municipal employer or from trying to persuade the employer to adopt a particular policy." *Id.* at 636. "Instead, the collective-bargaining restriction acts upon *government employers*. The statute tells these employers that they may not enter into binding agreements with their employees on a

---

[3] The specific provision at issue in *Laborers* provides that except as stated under Wis. Stat. § 111.70 *et seq.* "no local governmental unit may collectively bargain with its employees." Wis. Stat. § 66.0508(1m). The challenged provision here, Wis. Stat. § 111.70(4)(mb)1., prohibits municipal employers, a local governmental unit, from collectively bargaining with employees about anything except total base wages.

collective basis about anything other than base wages." *Id.* at 634–35. Thus, "general employees remain free to associate and represented employees and their unions remain free to speak; municipal employers are simply not allowed to listen." *Id.* at 635 (citation omitted); *see also WEAC*, 705 F.3d at 646 ("Act 10 places no limitations on the speech of general employee unions, which may continue speaking on any topic or subject.").

Plaintiffs-appellants have not pleaded a constitutional injury under *Laborers*. They alleged in the complaint and argue on appeal that municipal employers "approached Local 139 to provide services relating to training, temporary staffing and health benefits." They also argue that the "same municipalities declined to enter into agreements with Local 139 based on advice they received from WERC that such agreements would violate Act 10." Under plaintiffs-appellants' view, then, they could otherwise freely discuss certain topics with municipal employers, but Act 10 restricted the municipal employers from entering into agreements regarding those topics. That situation is fully consistent with *Laborers*. Accordingly, plaintiffs-appellants have suffered no invasion of their First Amendment rights from Daley's interpretation and application of Act 10's collective-bargaining limitation because they retain their rights to speak and associate freely. Moreover, to the extent they allege that Act 10, as applied, is unconstitutional because Daley interprets it to preclude municipal employers from listening to the union's speech, we agree with the district court that "the injury would run to the municipal employers, not to the union."

Perhaps anticipating this conclusion, as a backstop plaintiffs-appellants encourage us to revisit our

determination in *Laborers* that Act 10's collective-bargaining limitation is constitutional because it does not restrict the ability of unions and their members to speak, only the ability of municipal employers to listen. They assert that the Supreme Court's decision in *Janus* recognized that the right of unions and their members to speak on topics of public concern, whether through collective bargaining or otherwise, includes "the right to have a meaningful interaction when a municipality is willing." Therefore, they are "troubled by the rationale" we espoused in *Laborers*.

We decline to reconsider our precedent. Our holding in *Laborers* relied on the Supreme Court's decisions in *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463 (1979) (per curiam), and *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984). Those cases held that the First Amendment does not entitle public employees to an audience with the government. *See Smith*, 441 U.S. at 465 ("[T]he First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it."); *Knight*, 465 U.S. at 285, 286–87 ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues."). While plaintiffs-appellants argue that in light of *Janus* "there is every reason to believe the Supreme Court would be open to righting this historical wrong to the extent *Smith* and *Knight* bar Plaintiffs' claim on this issue," *Smith* and *Knight* remain good law; *Janus* did not address either case, and plaintiffs-appellants provide no meaningful explanation as to why or how *Janus* affects *Smith* and *Knight*. "No lower federal court can overrule a Supreme

Court precedent." *Foreman v. Wadsworth*, 844 F.3d 620, 623 (7th Cir. 2016). Therefore, *Laborers* dictates the outcome here. *See De Leon Castellanos v. Holder*, 652 F.3d 762, 765 (7th Cir. 2011) (noting that "it would take compelling circumstances, or an intervening on-point Supreme Court decision, to disturb" settled circuit precedent).

Accordingly, we agree with the district court that plaintiffs-appellants lack standing to bring their Count 2 challenge to Act 10's collective-bargaining limitation.

### B. Failure to State a Claim as to Count 3

We turn next to the district court's dismissal of Count 3 for failure to state a claim for which relief may be granted. In reviewing a district court's grant of a motion to dismiss for failure to state a claim, we "accept well-pleaded facts as true and draw all reasonable inferences in the plaintiffs' favor." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1060–61 (7th Cir. 2020). To withstand a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In Count 3, plaintiffs-appellants claim that Act 10's preclusion of voluntary dues deductions infringes on individual employees' First Amendment rights. They acknowledge that we upheld Act 10's payroll-deduction prohibition in *WEAC*, and that our precedent and that of the Supreme Court, particularly *Ysursa v. Pocatello Education Association*, appear to foreclose their challenge. Nonetheless, plaintiffs-appellants make

a convoluted attempt to distinguish this case from *Ysursa* and *WEAC*. Failing that, plaintiffs-appellants also argue that we should revisit our *WEAC* decision through the lens of the Supreme Court's decisions in *Janus* and *Citizens United v. Federal Election Commission*.

In *Ysursa*, the Supreme Court upheld a law prohibiting payroll deductions for union political activities because the First Amendment "does not confer an affirmative right to use government payroll mechanisms for the purpose of obtaining funds for expression." 555 U.S. at 355. Therefore, "a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right." *Id.* at 358 (quoting *Regan v. Tax'n With Representation of Wash.*, 461 U.S. 540, 549 (1983)). The Court concluded that while "publicly administered payroll deductions for political purposes can enhance the unions' exercise of First Amendment rights," states have "no obligation to aid the unions in their political activities." *Id.* at 359. Moreover, the decision not to allow payroll deductions "is not an abridgment of the unions' speech"; instead, "they are free to engage in such speech as they see fit." *Id.* Payroll-deduction prohibitions thus represent a state's decision to "decline[] to promote that speech by allowing public employee checkoffs for political activities." *Id.* at 355.

We applied *Ysursa* in *WEAC* to uphold Act 10's payroll-deduction prohibition against a First Amendment challenge. The plaintiffs there attempted to distinguish Act 10 from the law in *Ysursa* by noting that Act 10's prohibition applied only to general employees, rather than all public employees. *WEAC*, 705 F.3d at 646. We held that this distinction did not alter the analysis because "Act 10 erects no barrier to speech and speaker-based discrimination is permissible when the

state subsidizes speech." *Id.* In other words, a "government subsidy 'that discriminates among speakers does not implicate the First Amendment unless it discriminates on the basis of ideas.'" *Id.* (quoting *Leathers v. Medlock*, 499 U.S. 439, 450 (1991)). Applying that understanding, we held Act 10 to be constitutional under rational basis review because it "is neither facially discriminatory nor a neutral façade for viewpoint discrimination." *Id.* at 648.

Plaintiffs-appellants attempt to escape this precedent by arguing that *WEAC* did not consider Act 10's impact on the First Amendment rights of individual employees, rather than unions—as distinct from the analysis in *Ysursa*. This argument overlooks the fact that the Supreme Court rendered this distinction immaterial in *Ysursa* by concluding that "the State is not constitutionally obligated to provide payroll deductions at all," so long as it does not discriminate based on viewpoint. 555 U.S. at 359. While plaintiffs-appellants complain that *Ysursa*'s rationale "defies logic," that does not change the fact that it is binding on this Court.

We find similarly unavailing plaintiffs-appellants' argument that *Ysursa*'s rationale does not apply here because Act 10, unlike the statute in *Ysursa*, "does not impose a blanket prohibition or draw constitutionally permissible lines" because it "allows payroll deductions for some favored Unions, but not others." We rejected these exact arguments in *WEAC*; we concluded both that "speaker-based discrimination is permissible when the state subsidizes speech" and that "Act 10 is neutral—it does not tie public employees' use of the state's payroll system to speech on any particular viewpoint." 705 F.3d at 646, 648. Therefore, Act 10's payroll-deduction prohibition passed rational basis review, despite applying

only to general employees and not public safety employees. *Id.* at 657.

In an effort to save their claim, plaintiffs-appellants rely on *Citizens United*, arguing that "*WEAC* did not explain how a law precluding individual employees from funding an organization of their choice can be squared with" the holding of that case. We expressly considered *Citizens United* in *WEAC*, however, noting that the law there, unlike Act 10, "actively created [a] barrier[] to speech rather than mere subsidies. … by forbidding certain speakers from spending money, akin to prohibiting speech altogether." *Id.* at 648. Despite plaintiffs-appellants' claims to the contrary, Act 10 does not preclude municipal employees from funding their union if they so choose or prohibit unions from freely spending their money. Rather, Act 10 prohibits municipal employers from "deduct[ing] labor organization dues from the earnings of a general municipal employee or supervisor." Wis. Stat. § 111.70(3g).

Plaintiffs-appellants' contention that we should revisit *WEAC* because *Janus* overruled *Ysursa* fares no better. *Janus* held that the First Amendment prohibits compelled speech in the form of mandatory agency fees. 138 S. Ct. at 2486. It did not mention *Ysursa*, let alone overrule its holding that states have no obligation to provide any payroll deductions. Plaintiffs-appellants concede that "*Janus* did not have the opportunity to have directly overruled or altered the framework of *Ysursa*." Given that the Supreme Court does not normally overturn or dramatically limit its precedents *sub silentio, Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000), we conclude that *Ysursa*—and by extension, *WEAC*—still controls.

Finally, plaintiffs-appellants dispute the classification of a payroll deduction as a subsidy, arguing that this classification "ignores the *de minimis* burden on a governmental employer to provide that option to its employees." They therefore ask that we remand this case to conduct discovery on the burden payroll deductions impose on the state. As we noted in *WEAC*, however, "the Supreme Court has settled the question: use of the state's payroll systems to collect union dues is a state subsidy of speech that requires only viewpoint neutrality." 705 F.3d at 645 (citing *Ysursa*, 555 U.S. at 358–59).

Accordingly, the district court appropriately dismissed Count 3 of plaintiffs-appellants' complaint for failure to state a claim.

### C. The Legislature's Motion to Intervene

Because we now affirm the district court's dismissal of all three counts in plaintiffs-appellants' complaint, we agree with its conclusion that the Legislature's motion to intervene is moot.

### III.    Conclusion

For the reasons explained above, we AFFIRM the district court's dismissal of plaintiffs-appellants' complaint and denial of leave to amend, as well as the district court's denial of the Legislature's motion to intervene as moot.